(15 App. Div. 343.)

## BROADBELT v. LOEW.

(Supreme Court, Appellate Division, First Department.  March 5, 1897.)

1. MUNICIPAL CORPORATIONS—PARKS—POWER OF COMMISSIONERS.

The power of the department of public parks to control surface constructions on streets within 350 feet of a "public park" (Consolidation Act [Laws 1882, c. 410] § 688) does not apply to a street within that distance of a tract of land the taking of which for a park has been authorized by statute, but the area and boundaries of which have not been settled by the commissioners appointed for that purpose by the statute.

2. SAME—ENCROACHMENTS ON STREET—USAGE.

The extension of bay windows, etc., beyond the building line, is not authorized merely by the fact that many like constructions have been tolerated by the city authorities.

3. SAME—POWER TO PERMIT ENCROACHMENTS.

The common council is authorized to permit the construction of bay windows and stoops extending into areas, and beyond the building line, by Consolidation Act (Laws 1882, c. 410), § 86, subd. 3, giving authority to regulate the use of streets for signs, awnings, "and other purposes," and to prevent the extension of house fronts over the "stoop line," and subdivision 17, giving authority to regulate the use of areas.

4. SAME—INTERPRETATION OF STATUTE.

Such constructions are not forbidden by subdivision 4, providing that no obstruction of any street or sidewalk shall be authorized; that subdivision applying only to the driveway and the sidewalk outside the stoop line.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by William Broadbelt against Sarah L. Loew for specific performance of a contract to exchange realty, defendant counterclaiming damages by plaintiff's failure to perform.  From a judgment entered on a decision of the trial judge dismissing the complaint, and directing judgment for defendant in the counterclaim, plaintiff appeals.  Reversed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

John Frankenheimer, for appellant.
Henry W. Taft, for respondent.

PATTERSON, J.  The court dismissed the complaint in this action on the merits, and directed judgment for the defendant on a counterclaim, and this appeal is from that judgment.  The action was brought to compel specific performance of a contract for the exchange of real estate situate in the city of New York.  At the time fixed in the contract for its performance, the plaintiff appeared at the place designated for that purpose, and tendered to the defendant a deed of the premises to be conveyed by him to her.  The deed was not accepted, and the defendant refused to consummate the transaction, on the alleged ground that the plaintiff was unable to convey a marketable title to his property mentioned in the contract.  The only question passed upon by the court below was that of the marketability of the title as affected by certain alleged encroachments of the buildings upon the plaintiff's land on the public highway.  Another objection not relating to encroachments was urged, but not

passed upon, and it referred to a mortgage upon the premises, and a misstatement in the contract of the time at which that mortgage would fall due; but that objection was cured at the trial, and does not seem to be insisted upon, and certainly is of no consequence now. The property which the plaintiff contracted to convey to the defendant consisted of two houses and lots, known as "Nos. 400 W. 149th Street," and "773 St. Nicholas Avenue"; the first-mentioned lot forms the southerly corner of 149th street and St. Nicholas avenue, and the second lot immediately adjoins it on St. Nicholas avenue. One of the objections relating to encroachments upon the highway was that the wall of the house at the corner of 149th street and St. Nicholas avenue encroaches one inch upon the street line of 149th street. That objection is not referred to in the decision of the court below, and was clearly insufficient to condemn the plaintiff's title as unmarketable. It was not established by a preponderance of evidence, as a fact in the case, that there was such an encroachment. The evidence of the surveyors upon that subject creates such a conflict that it cannot be said that the fact was established. The remaining objections were that the bay windows of each of the houses erected on the two lots encroached upon the street line of St. Nicholas avenue 7½ inches, more or less, and that the stoop of No. 400 West 149th street encroached upon the street line of 149th street something over 6 feet. The existence of these bay windows, and the projection thereof over the street or building line, and of the stoop or portico, as it is called, extending between 6 and 7 feet beyond the street line of 149th street, is admitted.

In the decision of the court below, it is stated, as the ground of the judgment directed to be entered, that the easterly wall of each of said buildings has been unlawfully erected partly upon St. Nicholas avenue, and unlawfully occupies a portion of St. Nicholas avenue, and that said walls project into and encroach upon said avenue to the extent of 7½ inches; that the buildings erected upon the plaintiff's land are a material part of said real estate, and that, by reason of said encroachments upon said St. Nicholas avenue, the owner of said buildings is and will be liable to be compelled to remove the said encroaching walls; that, by reason of said liability, the plaintiff's title to said lands and buildings is incumbered, and is not good and marketable; that, by reason of said encroachments, the plaintiff was not at any time since the making of the contract alleged in the complaint, and is not, able to perform said contract on his part, and has not been able, and is not able, to convey a good and marketable title in fee simple to said lands and buildings; and that the plaintiff is not entitled to the performance of the contract. Thus, the question before the court below, and now to be considered by us, relates to bay windows, such as those pertaining to the plaintiff's houses, and which project beyond the street line, being lawful structures, and to the right to build or maintain stoops to houses beyond that street or building line. It is evident that this is a question that can arise only between the municipal authorities and the owner of a building fronting on a public street (Adler v. Railroad Co., 138 N. Y. 173, 33 N. E. 935; Griffith v. McCullum, 45 Barb. 561), for the so-called obstruc-

tions are not of such a character as to constitute a public nuisance affecting a private right. In view of the ordinances of the common council of the city of New York, and of the acquiescence of the authorities of the city in the allowance of constructions such as those connected with the plaintiff's houses, the possibility of the owner ever being molested is so exceedingly remote that the objections become technical only, and not substantial.

Prima facie, any obstruction in a highway is unlawful; but it is urged by the plaintiff that these constructions are lawful, for various reasons; and, first, because they are built pursuant to a usage which has existed in the city of New York for many years, and that there are thousands, and perhaps tens of thousands, of stoops and bay windows and area openings and coal chutes and cellar doors and other appurtenances to houses fronting on city highways, which have been allowed to exist in the public streets beyond the building line. But no sanction can be given to a violation of the law by the placing of particular obstructions or nuisances in city streets because things of a like character have been tolerated in other localities by the city authorities. The only part that usage can play in the decision of a case of this character is to show assent in individual instances, and also to show a situation with reference to the use of the public streets for the ease of buildings fronting upon them, in view of which situation it may be assumed that legislation upon that subject has been enacted.

It is also urged by the plaintiff that an express permission to build the houses in question, with the bay windows constructed as they are, was given to the plaintiff by the commissioners of public parks of the city of New York, and that St. Nicholas avenue, at the point at which these houses are erected, was under the jurisdiction of the park commissioners. If that be so, it ends the whole contest with reference to the bay windows, for it was expressly decided by the court of appeals in the case of Wormser v. Brown, 149 N. Y. 163, 43 N. E. 524, that the commissioners of public parks are invested with full authority to allow the construction of bay windows on any street within 350 feet of the boundary line of any park or public place under their jurisdiction. It is shown in this case that the property in question, on St. Nicholas avenue, is within 350 feet of the westerly end of a certain tract of land which the commissioners of public parks may take for a projected colonial park; and it is declared by the act authorizing that park that so much of a certain designated area of land as may be taken by the commissioners for it is a public park. Laws 1894, c. 46. We do not think it can be said, however, that the westerly side of St. Nicholas avenue was at the time the contract was made between these parties, or is at the present time, within the jurisdiction of the commissioners of public parks. The park has not been laid out; its area has not been defined by commissioners appointed under the act of 1894; its boundaries are not settled; and it may be that the commissioners will not extend the line of that park so that the westerly line of St. Nicholas avenue would be no further distant than 350 feet from the westerly

44 N.Y.S.—11

line of the park, as its boundaries may be fixed hereafter. The law-fulness of these structures, therefore, does not depend upon permission derived from the commissioners of public parks.

But the right of the plaintiff to build the bay windows and the stoop or portico is founded in the law; for the fair inference from the statutes of the state and decisions of the courts is that it is within the power of the common council to pass appropriate ordinances regulating the subject of the fronts of buildings facing on public streets, and to grant permission to owners of buildings to occupy a certain space for certain purposes beyond the building line, if those constructions do not in reality interfere with the free use of those parts of the public streets to be kept clear of obstructions as public highways. Ordinances of the common council of the city of New York permit the construction of bay windows not extending beyond the house line more than one foot. The ordinance adopted May 21, 1895, allows bay windows, oriel windows, or other windows to be maintained on any building theretofore constructed or thereafter to be constructed; and section 8 of chapter 24 of the Ordinance of 1866 provides that no person or persons shall construct or continue any platform, stoop, or step in any street in the city of New York which shall extend more than one-tenth part of the width of the street, nor more than seven feet. Sections 192 and 193 of the Revised Ordinances of 1890 provide that no area in front of any building in the ·city of New York shall extend more than one-fif-teenth part of the width of any street, nor in any case more than five feet from the inner wall of such area to the building. Section 201, art. 10, c. 6, of the Revised Ordinances of 1880, provides that no person or persons shall construct or continue any cellar door which shall extend more than one-twelfth part of the width of any street, nor more than five feet into any street. All these ordinances of the common council it was within their power to enact, and from them the inference is plain that, except as forbidden, the several constructions referred to are permitted. By section 86 of the con-solidation act there was conferred upon the common council power to make ordinances not inconsistent with the law and constitution of the state; among other things, to regulate the use of the streets, to regulate the use of sidewalks, to regulate the use of streets for sidewalks, signs, sign posts, awnings, awning posts, etc., "and other purposes." The ordinances above referred to come distinctly within the third subdivision of the eighty-sixth section of the consolidation act, and within the power to regulate the use of the streets for the purposes mentioned. By the seventeenth subdivision of section 86 of the consolidation act, the common council is authorized to pass ordinances with respect, among other things, to areas, and an ordinance has been referred to above which authorizes the setting apart of areas extending five feet from the house line. This subdivision relates to the construction, repair, and use of such areas; and the ordinance allowing bay windows, read in connection with that re-lating to areas, authorizes the construction of such bay windows within the inclosure of the area, for it is an ordinance affecting the use of that area, and within the power of the common council to

pass. The ordinance of 1895 permits the construction of the bay window within the area space so long as that construction does not encroach more than one foot beyond the street line. Reading these ordinances together and in connection with the power conferred upon the common council by section 86 of the consolidation act, authority to build the bay windows under proper permission can be inferred. And so with reference to the building of the stoop on St. Nicholas avenue. Section 86, as said before, recognizes a stoop line, and the ordinance above referred to in that connection authorizes the building of stoops within that line; and not only the fact of the city's consent is shown, but the authority to give that consent is also made to appear. But it is said that subdivision 4 of section 86 of the consolidation act applies, and places an interdict upon the common council granting authority to build these bay windows and the stoop or portico. That subdivision of the section provides that the common council shall have no power to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the same. This subdivision of section 86 must be construed with reference to the other subdivision, and is not to be interpreted as nullifying such express authority to do particular things as is given by such other subdivisions, but is to be construed as excluding or excepting such things as are specifically authorized by the other subdivisions. Hoey v. Gilroy, 129 N. Y. 132, 29 N. E. 85. The provision cited of subdivision 4 of section 86, relating to placing or continuing encroachments upon any street or sidewalk, can only be reasonably applied to that part of the highway which is used by the public,—that is to say, the carriageway and the sidewalk proper outside of the stoop line,—and, as to the space within that line, is inoperative, as affecting certain constructions authorized by the consolidation act, as was held in the case cited. In view of all the provisions of section 86, and of all the ordinances passed by the common council relating to the use and regulation of the streets, the prohibition of subdivision 4, above cited, can receive no other reasonable interpretation.

None of the objections taken to the marketability of the title to the plaintiff's property are well founded, and the ruling of the court below was erroneous, and the judgment must be reversed, and judgment for specific performance of the contract, as demanded in the complaint, directed, with costs in the court below and in this court to the plaintiff.

WILLIAMS, O'BRIEN, and INGRAHAM, JJ., concur.

VAN BRUNT, P. J. I dissent. The power to regulate areas gives no power to devote the same to other purposes than those of an area, such as filling up in whole or in part by permanent building. Such a rule would enable the common council to authorize the extension of all buildings into the street.