(75 Misc. Rep. 3.)

### LEERBURGER v. WATSON.

(Supreme Court, Special Term, New York County. December, 1911.)

1. SPECIFIC PERFORMANCE (§ 65*)—CONTRACTS ENFORCEABLE—SALE OF LAND—DEDUCTIONS FROM PRICE.

A purchaser of land cannot maintain an equitable action to have the depreciation in its value by reason of defect in title fixed and deducted from the price, and to compel a conveyance upon payment of the residue.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. § 196; Dec. Dig. § 65.*]

2. VENDOR AND PURCHASER (§ 130*)—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—MARKETABILITY.

Since questions relating to slight projections of the cornices, sills, lintels, etc., of a building beyond the building line, can arise only between the owner and the municipal authorities, such projections do not

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

render the title unmarketable, where the contract of sale bounds the premises on the street line.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130;* Specific Performance, Cent. Dig. § 258.]

3. VENDOR AND PURCHASER (§ 130*)—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—MARKETABILITY.

A retaining wall which stands wholly on the rear of a lot sold is not an encroachment, and does not affect the marketability of the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130.*]

4. VENDOR AND PURCHASER (§ 130*)—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—MARKETABILITY.

A purchaser of land cannot reject the title as unmarketable merely because vaults outside the street line which bound the premises and under the sidewalk, but not owned by the vendor, are not included in the deed, even though a boiler room in the building has no exit to the street except through the vault, and Building Code, § 76, makes it compulsory to have a direct access from the boiler room to the street.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130.*]

5. VENDOR AND PURCHASER (§ 130*)—PERFORMANCE OF CONTRACT—TITLE OF VENDOR—MARKETABILITY.

That the building on property contracted to be conveyed does or does not conform to the Building Code of the city of New York or other municipal ordinances does not affect the marketability of the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130.*]

Action for specific performance by Henry Leerburger against Henry R. C. Watson. Judgment for defendant for specific performance.

Keith & Abbot, for plaintiff.
Decker, Allen & Storm, for defendant.

GERARD, J. Both plaintiff and defendant ask for the specific performance of a contract for the purchase and sale of Nos. 50 and 52 Franklin street, in this city. Plaintiff, the vendee, alleges that there are certain alleged deficiencies in or objections to the title of the property tendered him, as follows: That a retaining wall in the rear encroaches upon the premises; that cornices, sills, lintels, ledge, and casings of the buildings in question project over the public street; that platforms, iron steps, trapdoor, and freight elevator encroach upon the sidewalk; and that the vaults under the sidewalk are unlawful, and that their use may at any time be forbidden by the city. The plaintiff asks that a deduction be made from the contract price by reason of these alleged deficiencies or objections, and that upon payment of the balance to defendant defendant be compelled to deliver a deed of the premises. Defendant claims the title accords with the contract, and that he is entitled to specific performance according to its terms.

[1] I am met at the outset of this case by the objection raised by the defendant to the effect that the alleged cause of action set forth by plaintiff is not maintainable at all, and defendant cites Levy v. Hill, 50 App. Div. 294, 63 N. Y. Supp. 1002, decided in the Appellate Division of this department, as authority for that proposition. In

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that case plaintiff, the vendee in the contract of sale, brought a similar action to the one at bar, asking a deduction from the purchase price because the front stoop of the building extended into the public street a distance of fifteen feet. The court, Mr. Justice Ingraham, writing the opinion, held the action not maintainable. In Sokolski v. Buttenwieser, 96 App. Div. 22, 88 N. Y. Supp. 973, Mr. Justice Patterson said:

"The theory upon which the action proceeds is that specific performance of a contract for the sale of real estate may be directed by the court in cases in which an allowance may be made by way of deduction from the purchase price for incumbrances or other charges upon the property. There is no doubt of the general rule upon this subject, and the English courts have carried the doctrine so far as to compel specific performance of a contract where the price is fixed but where it is required to make expenditures for repairs, and have allowed the cost of the repairs in reduction of the purchase price. But the doctrine of the English cases has never been adopted by the courts of this state. Abatement from the purchase price has been allowed for deficiency in title as to the quantity or quality of the property sold, but none of the cases in this state have gone to the extent of making an allowance in diminution of the purchase price named in an executory contract for the purchase and sale of land, where such an allowance would be contrary to the terms of the contract and to the express stipulations of the contracting parties and where it would in effect be making a new contract between them."

The parties to Levy v. Hill were in court a second time (70 App. Div. 95, 75 N. Y. Supp. 19), and Mr. Justice Hatch, referring to the previous decision of the court, wrote as follows:

"The first action was brought by the plaintiff for the specific performance of the contract, and judgment was asked that a just deduction be made from the purchase money on account of * * * the incumbrance and encroachments hereinabove mentioned, and, after making such deduction and upon payment of the residue of the purchase money according to the terms of the agreement, that the defendant specifically perform the same. The court held that such action could not be maintained; that it was not in fact an action for specific performance of the contract in accordance with its terms, but was an equitable action by which it was sought to have the depreciation in the value of the property fixed by reason of the claimed defects in the title, and, when such sum was arrived at, to deduct it from the purchase price and compel a conveyance upon payment of the residue; that such an action could not be maintained, as the court was powerless to grant any such relief, and upon that ground alone a judgment was affirmed which dismissed the complaint."

Plaintiff alleges in his brief that these decisions of the Appellate Division are "discredited cases," but I am not aware of any case in which the Appellate Division of this department has reached any other conclusion, and therefore I am constrained to dismiss the plaintiff's complaint.

[2] There remains the question as to whether defendant is entitled to a judgment for specific performance; that is, does he tender plaintiff a title which is marketable? In Broadbelt v. Loew, 15 App. Div. 343, 44 N. Y. Supp. 159, affirmed on opinion below in 162 N. Y. 642, 57 N. E. 1105, the court held that the title to property on which there were projecting bay windows and stoops extending beyond the building line was marketable; that the question as to these projections could only arise between the owner and the municipal authorities, and the objections to the marketability of a title based on the existence

of such projections were technical only, and not substantial. These projections, etc., have existed in the buildings in question for a very long time. But it is claimed by plaintiff that all the prior decisions, culminating in Broadbelt v. Loew, have been overruled by the case of Ackerman v. True, 175 N. Y. 353, 67 N. E. 629, where it was distinctly held that an adjoining owner could compel the removal of projections extending beyond the building line on an adjoining house. It must first be noted that Ackerman v. True and other cases where the city compelled the removal of projections did not involve the question of the marketability of the title. Indeed, in the opinion in the Ackerman v. True Case, the case of Wormser v. Brown, 149 N. Y. 163, 43 N. E. 524, is referred to with approval in so far as it states the principle that the adjoining owner must show some special change. In that case the bay window which the courts refused to order taken down extended six feet over the building line, and in the True Case the Court of Appeals said that such extension was not "a practical interference with the use of the streets," although they also put their decision on the ground that plaintiff in the Wormser Case had on his property an erection extending an equal distance into the street. In the case at bar the roof cornice extends 2 feet 6 inches, the sills 4 inches, the ledge 1 foot 4 inches, the lintels 7 inches. the window casing 2 inches; the vault light on the sidewalk is 17 feet 8⅜ inches long, 6 feet 2 inches wide, and projects from 2 to 9 inches only above the sidewalk. There is a second vault light platform 1½ inches above the sidewalk; a steel coping about 1½ inches above the sidewalk, between the light vault and the freight elevator, and a sort of elevated platform next the building, common in the lower part of the city, with a step about a foot high. This platform extends about five feet out on the sidewalk from the building line. In the cases of McMillan v. Klaw & Erlanger Amst. Co., 107 App. Div. 407, 95 N. Y. Supp. 365, Williams v. Silverman Amst. Co., 111 App. Div. 679, 97 N. Y. Supp. 945, and City of New York v. Rice, 198 N. Y. 130, 91 N. E. 283, 28 L. R. A. (N. S.) 375, these invasions of the public streets were of a serious nature, and the question of marketability was not involved. In the Ackerman Case the defendant had built the wall of his house 3½ feet beyond the building line. There can be no question that no ordinances or acts of acquiescence on the part of the city can deprive an adjoining owner of his rights where such rights are substantially or specially affected. In a recent case Ex Judge Leventritt, as referee, in an exhaustive and learned opinion, holds that a bay window projecting one foot does not render the title unmarketable. As the projection in the Wormser Case was over six feet, and as that case is cited with approval in the Ackerman v. True Case, which last case plaintiff claims is controlling, it can hardly be said that the Ackerman case is authority for holding that the small projections on the building in question—the platform and iron steps—render the title unmarketable.

[3] As to the retaining wall in the rear of the lot, that wall is built on the land which defendant contracted to convey, and I cannot see how it constitutes an encroachment or in any way affects the marketability of the title.

[4] A different question arises with reference to plaintiff's claim concerning the vaults. The contract of sale bounded the premises sold on the street line, and outside of the street line and under the sidewalk are certain vaults. This vault space has never been paid for, and plaintiff contends that this vault space is appurtenant to the premises, that the boiler room in the southeast corner of the building has no exit to the street except through the vaults, and that by the Building Code, § 76, a direct access from the boiler room to the street is compulsory, and plaintiff contends that, because the vaults are in a sense appurtenant and because the city has not been paid for them, the title offered is unmarketable.

[5] In the first place, the question whether or not a building on property contracted to be conveyed conforms to the Building Code or other municipal ordinances does not affect the marketability of the title offered (Woodenbury v. Spier, 122 App. Div. 396, 106 N. Y. Supp. 817); and, second, while it is true that a conveyance may carry some right outside of the lines of the property conveyed, such as an easement in an alleyway (Huttemeier v. Albro, 18 N. Y. 48), and stairs, elevators, and closets contiguous to rooms leased in a building (Hall v. Irwin, 78 App. Div. 107, 79 N. Y. Supp. 614), it would introduce a novel principle to our law to hold that an owner of the premises contracted to be sold and described by metes and bounds must buy property outside those metes and bounds and tender a deed of it with his deed of the land sold, because such other land has been used in connection with or appurtenant to the land sold. If the owners of the premises owned the vaults, I think they would pass as appurtenances, but, not owning them and not having contracted to sell them. I fail to see how the title he tenders can be rejected because the vaults are not included. The so-called platform is in effect a sort of stoop, and does not project as far as the one referred to in the Broadbelt Case. Such constructions are authorized by the common council under authority from the Legislature, and that such authority is within the power of the Legislature see Jorgensen v. Squires, 144 N. Y. 280, 39 N. E. 373; and in Ackerman v. True it is stated that the Legislature may authorize "small nuisances," or, as was said in Hatfield v. Straus, 189 N. Y. 214, 82 N. E. 172:

"There can be no doubt that municipal authorities having the care and control of the streets in a city may authorize their temporary use by private parties for private purposes to a limited extent. The precise limits beyond which that power cannot be exercised have not been very specifically or accurately defined, and perhaps cannot be. The governing body in a city may permit private parties to deposit building materials in the streets to construct and use coal holes, cellarways, areas, vaults under the sidewalks, awnings above, and the like. But all these and all similar uses of the public streets for private use are either expressly authorized by statute or sanctioned by the courts as being exceptions to the general rule, born of necessity and justified by public convenience and custom. The right to such use is given to the general public and enjoyed by all citizens alike."

I think it may be stated that there is hardly a building in the city which does not have ornaments, cornices, stoops, and lintels projecting as far as the ones in this case. I am of opinion the defendant tenders a marketable title.

Judgment for defendant for specific performance.