THE ACME REALTY COMPANY, Appellant, *v.* SOLOMON SCHINASI, Respondent.

Appeal — Appellate Division may make original findings and render judgment accordingly — such findings conclusive upon Court of Appeals — New York city — streets — power to authorize removal of obstructions — vendor and purchaser — when vendor cannot give marketable title owing to encroachment of building on street — when rule of caveat emptor does not apply.

1. Under the amendment to section 1317 of the Code of Civil Procedure (L. 1912, ch. 380), the Appellate Division has power to make original findings, overruling those made by the court of first instance, and to render judgment accordingly, and findings thus made, and supported by evidence, are conclusive upon this court.

2. The right of the public to the use of the streets of the city of New York is absolute and paramount, and the legislative grant of power expressed in section 50 of the charter of that city (L. 1901, ch. 466), "to prevent encroachments upon and obstructions to the streets," carries with it the duty to "authorize and require their removal" when the proper public officers deem it necessary.

3. Since the policy of the city now is to compel the removal of building encroachments upon its streets, it cannot be said that a vendor has a marketable title if his building encroaches upon the public street to such an extent as to threaten a vendee with a substantial loss in the fee and rental value of the premises, and a burdensome expense in altering the building to meet the requirements of the law. A vendee has the right to a title that will enable him to hold his land in peace, and to be reasonably sure that no flaw or doubt will arise to affect its marketable quality and value.

4. The rule of *caveat emptor* does not apply where the projections, though visible, are of such a character that nothing short of an engineer's survey of the premises would determine whether they encroach upon the street.

*Acme Realty Co.* v. *Schinasi*, 154 App. Div. 397, affirmed.

(Argued June 15, 1915; decided July 13, 1915.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 11, 1913, upon an order reversing a judgment in favor of plaintiff entered upon the report of a referee and directing judgment dismissing the complaint and in favor of defendant upon his counterclaim.

The parties to this action entered into a contract dated May 7th, 1906, for the sale by the plaintiff and the purchase by the defendant of a seven-story apartment building situate on the corner of Manhattan avenue and One Hundred and Sixteenth street in the borough of Manhattan in the city of New York. The premises are more particularly described in the contract as numbers 354 and 356 West One Hundred and Sixteenth street, and 275 Manhattan avenue. The purchase price agreed upon was $107,500, and it covered all the plaintiff's personal property on the premises as well as the realty. A full covenant warranty deed was to be delivered on the 29th day of May, 1906, conveying the premises free from all incumbrances except a specified mortgage and lease. Several adjournments were had until June 6th, 1906, when the defendant refused to accept the title tendered by the plaintiff on the ground that the same was unmarketable because of certain projections of parts of the building, which constituted encroachments beyond the building line of both One Hundred and Sixteenth street and Manhattan avenue. These encroachments consist of

1. Two store front windows, otherwise described as show windows, on the ground floor of One Hundred and Sixteenth street and extending beyond the building line one foot.

2. Two oriel windows, constructed of masonry, corbeled out from the main wall on the One Hundred and Sixteenth street side of the building, extending from the bottom of the second story to the cornice at the roof, and projecting beyond the building line one foot.

3. One bay window, on the Manhattan avenue side, constructed of masonry, extending from the basement to the roof, and projecting beyond the building line one foot.

4. One oriel window, on the Manhattan avenue side, directly over the entrance to the building, extending from the bottom of the third story to the roof, and projecting beyond the building line one foot.

5. A stoop and portico, at the main entrance on the Manhattan avenue side; the portico is of limestone construction, rises two stories above the street, and projects beyond the building line one foot; the stoop extends along the face of the building fourteen feet and projects beyond the building line four feet.

The plaintiff brought this action to compel the defendant to specifically perform the contract above mentioned.. The defendant joined issue in an answer alleging the unmarketability of the plaintiff's title, and interposing a counterclaim for the recovery of $5,000 which he had paid to apply on the purchase price, and $266.87 which he had expended for the searching of the title and the making of a survey.

The matter was sent to the Honorable David Leventritt as referee, who rendered a decision for the plaintiff. From the judgment which followed, the defendant appealed to the Appellate Division where there was a reversal, with one dissent, on the law and the facts. The Appellate Division also dismissed the complaint on the merits and gave judgment in favor of the defendant for the amount of his counterclaim. The case is now before this court on the plaintiff's appeal.

The referee found that on June 6th, 1906, the final adjourned day for the closing of title, the plaintiff was

ready and willing to perform the contract in all respects. This finding was reversed by the Appellate Division, and other findings, proposed by the defendant and refused by the referee, were adopted. These are to the effect that the defendant had at all times been ready and willing to perform; that the plaintiff had not been able and willing to perform because of his inability to give a good and marketable title, and that this was due to the fact that his building encroached on the two public streets by which the exterior lines of the premises are bounded.

The referee further found that the cost of removing the building projections and restoring the building to a condition in which there would be no encroachments beyond the building lines, would not exceed two thousand dollars; that such removal would not result in a substantial rental loss; that the fee value would not be substantially impaired by such removal; that neither the city of New York nor any adjoining owner had ever complained of the projections, or demanded that they be removed; that the possibility was exceedingly remote that any adjoining owner would ever ask for the removal of the encroachments; that the title to the premises is good and marketable, and that the defendant was not justified in declining to accept the same.

These findings of the referee were also reversed. The Appellate Division substituted for them the defendant's proposed findings, refused by the referee, to the effect that the projections of the bay windows, stoop, portico and balcony constitute unlawful encroachments upon the street line which must be removed at once on notice from the city; that the city has recently ordered the removal of long standing similar encroachments in wide residential and business streets; that the plaintiff, on the day set for performance, could not deliver a good and marketable title; and that the rights of the city and its recent policies are such that the existence of the projections constitute a cloud upon the title, since there is a present and continu-

ing risk that the owner of the property may be subjected to suits by the city and compelled to remove the projections.

*Philip S. Dean* and *M. J. Stroock* for appellant. The building was erected in pursuance of permits lawfully granted under the provisions of the Building Code, and so long as these are unrevoked the projections are not subject to attack by any one. (*Adler* v. *Met. El. R. Co.,* 138 N. Y. 173; *Ackerman* v. *True,* 175 N. Y. 353; *City of New York* v. *Rice,* 198 N. Y. 127.) In any event, whether the projections were lawful *ab initio* or not, the title is none the less marketable, as the defects complained of fall within the rule *de minimis non curat lex.* (Fry on Spec. Perf. [3d Am. ed.] § 858, note 2; 26 Am. & Eng. Ency. of Law, 108; Pomeroy on Spec. Perf. §§ 452, 453; Bispham Prin. of Equity [8th ed.], § 839; 2 Kent Comm. p. 475; *Winne* v. *Reynolds,* 6 Paige, 407; *King* v. *Barbeau,* 6 Johns. Ch. 38; *Ten Broeck* v. *Livingston,* 1 Johns. Ch. 357; *Hendricks* v. *Stark,* 37 N. Y. 106; *Webster* v. *Kings Co. Trust Co.,* 145 N. Y. 275; *Riggs* v. *Pursell,* 66 N. Y. 196; 74 N. Y. 370; *Broadbelt* v. *Loew,* 15 App. Div. 343; 162 N. Y. 642; *Merges* v. *Ringler,* 34 App. Div. 415; 158 N. Y. 701; *Garibaldi R. Co.* v. *Santangelo,* 164 App. Div. 513; *Sauter* v. *Frank,* 67 Misc. Rep. 657; *Foley* v. *Crow,* 37 Md. 51.) As the projections complained of were patent and visible and the defendant had actual notice of them, he cannot now be allowed to refuse to perform his contract by reason of their existence. (*Morgan* v. *Stevens,* 6 Abb. [N. C.] 356; *Canaday* v. *Stiger,* 55 N. Y. 452; *De Milt* v. *Hill,* 89 Hun, 56; *King* v. *Bardeau,* 6 Johns. Ch. 38; *Schaefer* v. *Blumenthal,* 169 N. Y. 221; *Webster* v. *Kings Co. Trust Co.,* 145 N. Y. 275; *Smithers* v. *Steiner,* 13 Misc. Rep. 517; *Klim* v. *Sachs,* 102 App. Div. 44.)

*Edmond E. Wise, Otto Horwitz* and *Harold Swain* for respondent. The encroachments complained of usurp

public property for private uses, are unlawful and constitute public nuisances. (*City of New York* v. *Rice*, 198 N. Y. 124; *Ackerman* v. *True*, 175 N. Y. 353; *Hatfield* v. *Straus*, 189 N. Y. 208; *Chegaray* v. *Mayor, etc.*, 13 N. Y. 220; *Matter of Hermance*, 71 N. Y. 481; *People* v. *Feitner*, 71 App. Div. 479; *City of New York* v. *Knickerbocker Trust Co.*, 104 App. Div. 223; *McMillan* v. *Klaw & Erlanger Co.*, 107 App. Div. 407; *Williams* v. *Silverman*, 111 App. Div. 679; *People ex rel. Cross Co.* v. *Ahearn*, 124 App. Div. 840.) The encroachments being unlawful, the title is unmarketable, as the defects complained of do not fall within the rule *de minimis non curat lex*. (*Stokes* v. *Johnson*, 57 N. Y. 673; *McPherson* v. *Shade*, 149 N. Y. 16; *Vought* v. *Williams*, 120 N. Y. 253; *Shriver* v. *Shriver*, 86 N. Y. 586; *Fleming* v. *Burnham*, 100 N. Y. 1; *Dyker Meadow Co.* v. *Cook*, 159 N. Y. 6; *Ferry* v. *Sampson*, 112 N. Y. 415; *Moore* v. *Williams*, 115 N. Y. 586; *Mutual Life Insurance Co.* v. *Woods*, 121 N. Y. 302.) The rule of *caveat emptor* does not apply. (*Webster* v. *Kings Co. Trust Co.*, 145 N. Y. 282; *Smithers* v. *Steiner*, 13 Misc. Rep. 517; *Stokes* v. *Johnson*, 57 N. Y. 673; *McPherson* v. *Schade*, 8 Misc. Rep. 424; *Smyth* v. *McCool*, 22 Hun, 595; *Arnstein* v. *Burroughs*, 27 N. Y. Supp. 958; *Bawie* v. *Brahe*, 4 Duer, 676; *Spero* v. *Schultz*, 14 App. Div. 423; *Schaefer* v. *Blumenthal*, 169 N. Y. 221; *Kline* v. *Sachs*, 102 App. Div. 44; *King* v. *Bardeau*, 6 Johns. Ch. 38.)

WERNER, J. The plaintiff, as vendor, seeks to enforce the specific performance of a contract for the sale of an apartment house on the corner of One Hundred and Sixteenth street and Manhattan avenue in the city of New York, and the defendant, as vendee, refuses to accept the title on the ground that it is unmarketable. The controversy is due to certain architectural projections of the structure beyond the building line of the two streets which bound the exterior lines of the premises. There is

no dispute as to the existence of these projections, but the litigation discloses a decided difference of opinion as to their legal effect upon the marketability of the title.

The plaintiff asserts that the projections are of a kind long sanctioned by municipal ordinance and expressly permitted by the building department; that they are within the boundaries prescribed by the Building Code; that the location of the premises practically precludes the possibility that these projections will ever have to be removed by direction of the municipal authorities; that even if such action should be taken the cost of removal and restoration would not exceed two thousand dollars and would not involve serious rental or fee damage. The referee sustained the plaintiff's contentions, and directed that the defendant perform the contract.

The defendant insists that the plaintiff is in default because of its inability to give a marketable title; that the title can only be made marketable by the removal of the encroachments, and that this, together with the necessary restorations, will entail an expense of over five thousand dollars besides causing very considerable rental and fee damage; that owing to the recent attitude of the municipal authorities concerning building encroachments upon the public streets, the risk of being compelled to remove the projections on this building, so far from being merely a remote possibility, is an imminent and constant danger. The Appellate Division upheld these views, reversing the decisive findings of the referee, and making new findings to sustain the legal conclusions that the complaint should be dismissed, and that the defendant should have an affirmative judgment on his counterclaim. Under the recent amendment to section 1317 of the Code of Civil Procedure (Laws of 1912, chap. 380), the Appellate Division now has power to make original findings, overruling those made by the court of first instance, and to render judgment accordingly. (*Bonnette* v. *Molloy*, 209 N. Y. 167; *Lamport* v. *Smedley*,

213 id. 82, 84.) Findings thus made, and supported by evidence, are conclusive upon this court, and its power of review on the merits is limited to the inquiry whether the established facts sustain the conclusions of law.

We have decided to adopt the views expressed by Mr. Justice Clarke in the excellent opinion which he wrote in the case at bar for the majority of his associates at the Appellate Division; but we deem it proper to supplement them with a few observations designed to emphasize the reason for the apparent conflict between the cases cited by the referee in support of his decision in favor of the plaintiff, and the more recent adjudications upon which the Appellate Division relies to justify its judgment in favor of the defendant. We shall endeavor to do this without a categorical review of the numerous decisions on the subject.

The title to the streets of the city of New York rests in the municipality as trustee for the public, and no grant or permission can be legally given that will interfere with their use by the public. The right of the public to the use of the streets is absolute and paramount. (*Deshong* v. *City of New York,* 176 N. Y. 475, 483.) This has always been the law applicable to the public streets of the city of New York. It is equally true, however, that for more than a century it has been the practice of the municipal authorities to permit the erection and maintenance of bay windows, oriel windows, show windows, stoops and porticoes within specified areas. This practice has been sanctioned by various ordinances of which we find an example in section 73 of the present Building Code of the city of New York, and which reads as follows: " Bay windows, oriel windows and show windows, on the street front or side of any building may project not more than one foot beyond the building line, and shall be constructed of such material and in such manner as will meet with the approval of the Department of Buildings." It is not contended that this section of the Building Code, or any of

its antecedent ordinances, has ever been effective to grant an absolute and permanent right to erect and maintain the structures therein enumerated. On the contrary, the referee recognized the true nature of the ordinance when, in his opinion, he said: "I assume that the permit issued by the building department is revocable, and that the city may bring an action to compel the removal of the encroachments." A similar concession is found in the brief of counsel for the plaintiff where he says: "The bay windows in question, therefore, were not unlawful · at the time they were erected and are not unlawful to-day, although, of course, the permits under which they were erected may be revoked and their removal ordered." Over against the permissive language of the quoted section of the Building Code, we find in the charter (Sec. 49, subd. 3) very positive limitations upon the power of the municipal assembly to adopt ordinances affecting the use of the public streets, and one of them is that it shall have no power "to authorize the placing or continuing of any encroachment or obstruction upon any street or sidewalk, except the temporary occupation thereof, during the erection or repairing of a building on a lot opposite the same;" and in section 50 the board of aldermen is given power "to prevent encroachments upon and obstructions to the streets and to authorize and require their removal by the proper officers." In this connection it is argued that this plain language of the charter is qualified and limited by other provisions *ejusdem generis,* but the referee, with characteristic frankness, concluded that these "do not empower the board of aldermen to authorize obstructions so dissimilar to the things specifically mentioned as masonry bay windows." This conclusion goes to the pivotal point of the controversy. If we give to the germane provisions of the charter their fair and unstrained interpretation we cannot escape the conviction that the legislative grant of power therein expressed " to prevent encroachments upon

and obstructions to the streets" carries with it the duty to "authorize and require their removal" when the proper public officers deem it necessary.

It is urged, however, that the exercise of this power, which is vested exclusively in the municipal authorities, cannot be anticipated by an intending vendee of premises that may be affected by its execution, and that it can be invoked as an objection to the marketability of a title only after it has been carried into effect. This is doubtless the view expressed in some of the earlier cases, such as *Broadbelt* v. *Loew* (15 App. Div. 343; affirmed by this court on the opinion below in 162 N. Y. 642); but those decisions have been superseded in the more recent cases of *Ackerman* v. *True* (175 N. Y. 353), *City of New York* v. *Rice* (198 N. Y. 124) and others which have followed them. The reason for the difference between the earlier and the later judicial decisions on the subject is to be found in the changed public policy of the municipality. The case of *Broadbelt* (*supra*) was decided by the Appellate Division in 1897, and by this court in 1900. From time almost immemorial it had then been the municipal policy to acquiesce in the practically universal custom of encroaching upon the streets with various building projections. This policy had its genesis in the infancy of the city and it had been continued without interruption. Although the population had reached large proportions when the case of *Broadbelt* was decided, it has since then multiplied in a constantly ascending ratio of rapidity. The growing density of population, and the spread of business into districts that were formerly devoted wholly to residential structures, have created many perplexing problems in connection with the use of the streets as public highways. It is familiar recent history that these changed conditions have led to the compulsory removal of building encroachments from areas, streets and blocks where they had always before been permitted. When the late Mr. Justice PATTERSON wrote the opinion in the case of *Broad-*

*belt*, there was nothing to indicate that there would ever be a radical departure from the early policy of the city with reference to building encroachments on the streets. Since then the change has become an accomplished fact, and its binding force has been recognized in the later judicial decisions.

The referee followed the decision in *Broadbelt* v. *Loew* (*supra*) and declined to follow the cases of *Ackerman* v. *True* and *City of New York* v. *Rice* (*supra*). He thought the former was directly in point, as it was a controversy between the vendor and vendee over the marketability of the title, and he deemed the latter two inapplicable because the city was the plaintiff in one action and an adjoining owner was the plaintiff in the other, while both were prosecuted to compel the removal of encroachments that were properly characterized as nuisances *per se*. The projections on the plaintiff's building, some of which have been found by the Appellate Division to be encroachments of substantial character upon the two streets by which the premises are bounded, may not be public nuisances so long as they are sanctioned by the permissive ordinance and the permit of the building department, but they may be converted into such nuisances at any moment when the municipal authorities exercise the power to direct their removal. When the case of *Broadbelt* v. *Loew* was decided the exercise of that power was regarded as an extremely remote possibility. At the present time, in view of the changed policy of the city, it is impossible for the courts to take that view. We know that it has recently been exercised with reference to many encroachments that once were considered immune from municipal interference, and that the courts have upheld the action of the public authorities.

In these circumstances it cannot be said that a vendor has a marketable title if his building encroaches upon the public street to such an extent as to threaten a vendee with a substantial loss in the fee and rental value of the prem-

ises and a burdensome expense in altering the building to meet the requirements of the law. A vendee has the right to a title that will enable him to hold his land in peace, and to be reasonably sure that no flaw or doubt will arise to affect its marketable quality and value. (*Vought* v. *Williams*, 120 N. Y. 253, 257; *Blanck* v. *Sadlier*, 153 id. 551, 556; *Moot* v. *Business Men's Investment Assn.*, 157 id. 201, 211; *McPherson* v. *Schade*, 149 id. 16; *Heller* v. *Cohen*, 154 id. 299, 306.)

Counsel for the plaintiff contends that the rule of *caveat emptor* applies, and in that behalf he relies on the referee's finding, "That the projections of the bay windows and portico, the existence of which the defendant has assigned as an objection to the title tendered to him,  * * * were patent and visible to one on inspecting the premises; and that the defendant, before entering into the said agreement  * * * personally visited the premises which were the subject of the said agreement and inspected the same." This finding was not disturbed by the Appellate Division, and we must, therefore, accept it. We think, however, that it does not suffice to bind the defendant by the rule of *caveat emptor*. The projections were visible, it is true, but they are of such a character that nothing short of an engineer's survey of the premises would determine whether they encroach upon the street. The photographs in evidence amply sustain this view.

The judgment of the Appellate Division should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., COLLIN, CUDDEBACK, MILLER and SEABURY, JJ., concur; CARDOZO, J., not voting.

Judgment affirmed.