PHILLIS H. ROSENTHAL, Appellant, *v.* EDWARD J. WEST et al., Respondents.

First Department, December 13, 1948.

*Robert Rosenthal* for appellant.

*M. Mortimer Lancet* of counsel (*Irving E. Field* with him on the brief), for respondents.

Dore, J. Plaintiff, purchaser of real property from defendants, the sellers, sues defendants for a claimed breach of the contract of purchase and sale; viz., the seller's failure, contrary to the express terms of the contract, to convey the premises free from a violation consisting of an unlicensed vault under the sidewalk in front of the premises. Plaintiff also alleged a second cause of action in fraud for claimed concealment of facts alleged to be known to defendants.

After a nonjury trial, the Municipal Court dismissed the complaint essentially on the ground that although " the maintenance of the vault without payment of the license fee was in violation of law, it was not a violation against or affecting the premises conveyed." Accordingly, the court held the violation did not come within the precise terms of the contract clause on which plaintiff relied. By a divided court, the Appellate Term affirmed and granted plaintiff leave to appeal to this court.

In August, 1944, defendants entered into the written agreement with plaintiff's assignor (herein " plaintiff ") to sell to plaintiff the premises 577 Third Avenue, Borough of Manhattan, City of New York; the deeds were delivered in September, 1944. The contract of purchase and sale contained the following clause relied on by plaintiff: " *All* notes or *notices of violations* of law or municipal ordinances, orders or requirements noted in or issued by the Department of Housing and Buildings, Fire, Labor, Health, or other State or Municipal Department having jurisdiction, *against or affecting the premises* at the date hereof, shall be complied with by the seller and the premises shall be conveyed free of the same, and this provision of this contract shall survive delivery of the deed hereunder. The seller shall furnish the purchaser with an authorization to make the necessary searches therefor." (Italics ours.)

In July, 1947, nearly three years after title closed, the Corporation Counsel of the City of New York, made demand on plaintiff for $434.84, for maintenance of 329.89 square feet of vault space in front of the premises 577 Third Avenue and asserted that the Borough President's records disclosed that no license had ever been obtained for maintenance of the vault, that it was illegal and a penalty was prescribed for each violation; he demanded that plaintiff obtain the license by paying the fee of $434.84 or procure a permit to fill in the vault and stated that unless plaintiff acted within thirty days the city would take action to protect its interests. Thereupon, plaintiff, relying on the above-quoted clause in the contract, demanded that defendants pay the license fee or fill in the vault; but defendants refused. The city's demand was made on plaintiff on July 31, 1947; on October 17, 1947, plaintiff paid the city $434.84, the unpaid balance of the license fee in question.

At the trial, plaintiff adduced proof showing that the city had made on defendants as former owners of the premises demands in relation to the vault before the sale to plaintiff;

e.g., (1) a bill of $494.84 dated April 14, 1938, for the existing vault; (2) a demand from the corporation counsel in February, 1940, similar to the 1947 demand made on· plaintiff, and (3) another similar demand on October 8, 1942. Plaintiff also showed city receipts, one in 1940, the other in 1941, totaling $60, " from Mrs. Gladys A. Arnd " (defendant in whose name the title was then held) " on account-partial payment for vault license relative to existing vault space " in premises 577 Third Avenue.

Answering the claim of fraud, defendants showed that in April, 1940, defendant West paid one Aldridge D. Kelley $150 for services to have the violation removed and that Kelley in 1940, had reported to West that " he had [the claim] withdrawn." Defendant West stated that he relied on that assurance; that defendants themselves had not made any payments and did not know if Kelley on their behalf had made any payments; and that at the closing he had entirely forgotten about the matter of the vault.

An abstract of title made for the buyer at the time of the sale in 1944, by the Ajax Abstract Corporation showed no violations in fire prevention, housing or building departments.

Defendants contend that the violation is not one " against or affecting the premises "; that plaintiff's payment was voluntary and plaintiff should have resisted the collection of the fee by the city; that there is no evidence as to the construction or type of vault or whether it is exempt from payment and no evidence to show that it is an adjunct of the premises or was being used for any purpose in connection therewith.

In our opinion on the particular facts disclosed, the maintenance of the vault without payment of the license fee was, as the trial court found, a violation of law (Administrative Code, § 82d5–1.0; § 82d5–5.0; *Appleton* v. *City of New York*, 163 App. Div. 680, 691, affd. 219 N. Y. 150). Specifically, section 82d5–5.0 of the code under the title " Violations " provides that any person " who shall maintain a vault contrary to the provisions of [previous] sections " including section 82d5–1.0 " shall· be subject to a penalty of ten dollars for each day or part of a day the same shall be maintained."

In the *Appleton* case (*supra*) the city appealed from a judgment enjoining it from enforcing against the plaintiffs therein payment of compensation for the use of vault space under the sidewalk in front of the plaintiffs', the owners', premises at Broadway and Cortland Street. The court held that even though

an abutting owner owned the fee to a street, he may not maintain a vault without a permit and held: " Maintaining the vaults without a permit is a violation of the ordinance and constitutes a public nuisance which the plaintiffs could be required to abate." (P. 691.) The court also pointed out that since 1859, there have been municipal ordinances requiring permission to maintain vaults in any public streets and records of permits for vaults have been kept since May 1857.

Defendants and the Municipal Court rely on *Leerburger* v. *Watson* (75 Misc. 3, affd. 157 App. Div. 915, affd. 213 N. Y. 662). In that case a vendee of real property sued the vendor for reduction of the purchase price because a vault abutting the property had not been paid for and also sought specific performance of a contract of sale which he claimed included conveyance of the vault without which the title was unmarketable. The court held that the title offered was not unmarketable and there was no duty on the vendor to purchase the vault since all the vendor contracted to sell was the property described in the contract by metes and bounds. That case has no application here. The vendee in this case does not claim that the title is unmarketable by reason of the vault or ask that defendants purchase the vault and include it in the deed. This vendee relies on the express agreement made to him by his vendors to convey free of all violations or notices of violation of law or municipal ordinance issued by any State or municipal department " against or affecting the premises ", a promise that expressly survived delivery of the deed.

The violation and notices of violation affected the premises. In *Parish* v. *Baird* (160 N. Y. 302, 306) it was held that the owner of premises abutting on a street may recover damages from one who negligently injures the sidewalk over a vault extending out under the sidewalk. The court (per O'BRIEN, J.) said: " It is true that the walk was in the street and not upon the plaintiff's land, and it may be that he could not sell or remove it, but as between himself and the city he was primarily liable for its construction and maintenance. * * * Moreover, the vault over which the walk was laid and of which it was a part, was an easement appurtenant to the plaintiff's property, and in itself a species of property which the plaintiff may protect as fully as any other property."

In that case the vaults had been built with the city's permission and the action was between the owner and a third party, a contractor, who had injured the sidewalk over the vault.

If an abutting owner, as between himself and the city, is primarily liable for the proper maintenance of such a vault, it would seem clear that a violation with respect to the vault does affect the premises. To hold otherwise is to ignore the purpose of the specific clause in the contract requiring the sellers to convey free of every violation.

After the seller warranted he would comply with any violation or notice of violation affecting the premises and convey the premises free from the same, it was, *at least as between vendor and vendee,* the sole parties to this action, the vendor's duty to comply and not the duty of the buyer. The seller's acts, moreover, with respect to the notices and the payments made on their behalf, should estop them from claiming as against their vendee that no violation existed or that the license had been issued or was by lapse of time unnecessary. If defendants did not pay the license fee, they were required to remove the violation; on demand, they refused to do either and the abutting land owner was compelled to cure the violation or answer in penalties and damages. That plaintiff under the facts here disclosed elected to pay the balance due on the license rather than incur penalties or the expense of filling in, should not defeat recovery.

The determination of the Appellate Term and the judgment of the Municipal Court should be reversed and judgment directed for plaintiff in the sum of $434.84, with interest, and with costs in all courts.

GLENNON, J. P., COHN, CALLAHAN and SHIENTAG, JJ., concur.

Determination of the Appellate Term and the judgment of the Municipal Court unanimously reversed and judgment directed for the plaintiff in the sum of $434.84, with interest, and with costs in all courts. [See *post*, p. 1033.]