Samuel H. Hoestadteb, J.
This is a consolidation of two actions, in the first of which English Speaking Union (New York) Inc. (Union), as plaintiff seeks specific performance by the defendant Payson of a written agreement by which he undertook to purchase a parcel of real estate in the city of New York, and in the second of which Betty Schwartz, as Payson’s assignee, sues to recover $25,000 paid by Payson on account of the purchase price of the parcel.
On December 3, 1956, the Union, a nonprofit membership corporation, agreed to sell to Payson, a real estate operator, the premises then occupied by it at 19-21 East 54th Street, in the borough of Manhattan for $440,000, of which half was to be paid in cash and the balance secured by a purchase-money mortgage. Because the Union was simultaneously entering into a contract to buy the property 16 East 69th Street for its occupancy after alterations and also needed an order of this court authorizing the sale to Payson, it was provided by rider that the Union should have the right to cancel its contract with Payson on or before December 27, 1956, should it be unable to obtain permission of the Supreme Court to sell 19-21 East 54th Street or should it because of zoning restrictions be unable to use 16 East 69th Street or should its plans for altering 16 East 69th Street not be approved. On the signing of the contract Payson deposited $10,000 in escrow which, with an additional $15,000 was to be paid on account of the purchase price, on the nonexercise by the Union of its right to cancel. The date set for closing was March 25,1957.
On December 21, 1956 the parties extended until January 11, 1957 the expiration date of the Union’s right to cancel and correspondingly postponed the closing date from March 25 to April 11, 1957. On January 11, 1957 the Union by á letter from its attorneys gave notice that it did not intend to cancel; this letter also said: “We hope you will now apply for title insurance and that you will notify us of any objections. * * * As you know, the English Speaking Union is quite anxious to close title on the date set forth in the contract, as amended.” The $25,000 payment towards the purchase price was thereupon made; this is the $25,000 which Payson’s assignee seeks to have repaid. Title insurance was evidently ordered soon thereafter, for the *672 survey discussed later is redated February 25,1957. By written stipulation the closing was adjourned successively to May 1, June 3, June 21 and finally August 1,1957. When the adjournment to June 21,1957 was agreed on the purchaser was informed that if the closing was adjourned beyond that date he would be required to pay interest from June 21, 1957 on the balance of $195,000 payable in cash; accordingly the stipulation for the adjournment to August 1, 1957 provided for such payment of interest from June 21, 1957. The letter of Payson’s attorney transmitting the signed stipulation for the adjournment to August 1, 1957, gave the assurance requested by the Union that any deposit received by Payson on a resale made in the interval to August 1, 1957 would be turned over to the Union, to be applied against the cash portion of the purchase price. The stipulation itself contains this vital term: “ The purchaser agrees that he will not ask any further adjournment.”
Despite this commitment, Payson’s attorney did on July 29, 1957, by telephone ask for one further adjournment and was told the Union would not accede to the request. In the interim the Union’s attorneys had been told informally that Payson was assigning the contract to Betty Schwartz and, in anticipation of such assignment, the purchase-money bond and mortgage had been redrawn to substitute her for Payson as the mortgagor. On August 1, 1957, the attorney for the assignee appeared at the office of the Union’s attorneys, exhibited the assignment from Payson to Betty Schwartz, dated July 22,1957 and requested an adjournment of the closing for 30 days. This attorney said he had no reason for making the request and that he had no objections to the title. The Union’s counsel refused to grant the adjournment, said he was ready to proceed with the closing and that he had the deed, bond and mortgage. The assignee’s attorney replied that there was no need to make a formal tender. Unquestionably a formal tender was expressly waived; moreover a tender would have been idle in the circumstances, for it was crystal clear that neither Payson nor the assignee was prepared or intended then to close the title. Soon thereafter the two actions now consolidated were begun.
The record establishes abundantly that Betty Schwartz, who is Payson’s secretary, was acting throughout as his nominee and on his behalf, and had no beneficial interest in the transaction. She was to take title in the first instance solely for the purpose of executing the purchase-money bond and mortgage and was immediately thereafter to convey the property to Payson. Pay-son has admitted that the request on August 1,1957 for another *673 adjournment was made at his instance and he testified that had the adjournment been granted he, not his assignee, would have taken title on the adjourned date. In view of the complete absence of interest on the part of the assignee, her presence in the situation should, for the purpose of decision, be regarded and the case treated as though Payson himself was the actor throughout, as in fact he was.
The two main grounds on which Payson resists the Union’s demand for specific performance of the contract are that he was entitled, as a matter of law, to a further adjournment of the title closing beyond August 1,1957 and that the title is unmarketable. He argues that the Appellate Division (5 A D 2d 814) upheld the right to an adjournment of the closing when it gave the assignee leave to serve an amended complaint. Her original complaint, which set out the various defects now asserted by Payson to render the title unmarketable and the refusal of the request for an adjournment, had been held insufficient at Special Term. The Union argued that the request for an adjournment so pleaded, negatived the plaintiff’s readiness and willingness to perform and was therefore fatal to a recovery of the down payment. The Appellate Division modified by permitting service of an amended complaint alleging that the plaintiff was able and willing to perform provided a reasonable adjournment of the closing had been granted and eliminating allegations with respect to objections to title not made on the law day. The amended complaint omits all reference to objections to title and thereby unequivocally admits that no objection to title was made on the law day. In my opinion the Appellate Division, in so granting leave to amend, did not determine that either Payson or Betty Schwartz was on August 1, 1957 entitled to a further adjournment of the closing; that is the question to be decided here.
While the stipulation adjourning the closing from June 21 to August 1, 1957 did not in terms state that time was then of the essence, it nevertheless plainly made it so. When the Union insisted that Payson agree in that stipulation not to ask for any further adjournment it gave him unmistakable notice that, despite the prior adjournments, the time had now come when he must perform and that no more indulgence was to be expected. The closing on August 1, 1957 then became of the essence and Payson by signing the stipulation manifested his assent thereto. The interval of almost six weeks until August 1, 1957 was long enough in the circumstances to constitute a reasonable time, under the doctrine of Taylor v. Goelet (208 N. Y. 253); Lojo Realty Co. v. Estate of Johnson (235 App. Div. *674 68) and Ballen v. Potter (251 N. Y. 244) cited by Payson. It may be noted, moreover, in each of the last two cases specific performance was ultimately directed. I conclude that the Union’s refusal to consent to an adjournment beyond August 1, 1957 was neither unreasonable nor unwarranted. It is noteworthy that on August 1, 1957 no reason was given for the request that the closing be postponed again, nor has the testimony on the trial revealed any reason for the request. The Union was clearly under no duty to grant further delay to suit Payson’s convenience. (See Lawrence v. Miller, 86 N. Y. 131; Schmidt v. Reed, 132 N. Y. 108, 113; 1 Warren’s Weed on New York Real Property [4th ed.], pp. 114 — 115.)
The title objections are all based on survey variations. The building on the premises was erected about 1900; the survey originally dated September 10, 1937 and at Payson’s request redated February 25, 1957 was not delivered nor the title objections based thereon communicated to the Union’s attorneys until after the commencement of the present litigation between the parties. It thus appears that Payson, an experienced real estate operator, had knowledge of the contents of the survey for substantially five months before August 1, 1957 and had in the intervening period obtained successive postponements of the title closing. Yet at no time did he make any objection to title predicated on the survey. I do not reach the question whether, as the Union contends, Payson waived the objections he now asserts, even if they might otherwise justify rejection of title. (See Ossining Associates v. City of New York, 148 N. Y. S. 2d 496.) I conclude that none of the objections renders the title unmarketable.
Though it is not necessary to rule that Payson’s conduct constituted a waiver of his right to reject title because of the survey exceptions, his attitude towards them may nevertheless be taken into account in weighing their effect on the marketability of the title. In a letter of January 14, 1957, forwarding the $15,000 check, his attorney stated: “ I will advise you as soon as feasible, if there are any objections to title.” When the Union’s attorneys by letter of May 23, 1957 gave notice that they would be ready to close on June 3, they added this postscript : “ If the title company has reported any exceptions that we should know about, we should appreciate your advising us. ’ ’ After this Payson through his attorney negotiated the two later adjournments, but nothing was said about possible objections to title. The present objections stand out in bold contrast to the silence in which Payson had theretofore persisted.
*675 By the contract the premises were sold subject to any state of facts an accurate survey would show, “provided the same does not render the title unmarketable.” The principal objection, indeed the only one on which Payson offered any testimony, arises out of the encroachment on 54th Street of the entrance columns and steps. These street encroachments are said to justify rejection of title, on the authority of Acme Realty Co. v. Schinasi (215 N. Y. 495); the contention, however, overlooks the clause now generally found in contracts for the sale of real estate in this city and obviously devised to meet the ruling in the case cited: ‘1 Said premises are sold and are to be conveyed subject to * * * 3. Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway.” This provision is a complete answer to the objection based on the foregoing street encroachments.
Moreover, mindful of section 026-233.0 of the Administrative Code of the City of New York, which permits the maintenance of structures which projected beyond the building line on January 1, 1938 until their removal is directed by the Council or the Board of Estimate, Payson evidently realized that there was little likelihood that these encroachments would be disturbed by the municipal authorities in the near future.
The remaining survey exceptions need not be enumerated or discussed seriatim. Some are covered by an overhanging cornice agreement and by a party wall agreement subject to which the property was sold, and the others are trivial and self-evidently will not interfere to any substantial degree with the use and enjoyment of the premises. They are the survey variations permitted by the contract which do not make the title unmarketable and Payson’s studied indifference to them makes it clear that he so regarded them.
Payson’s contention that on his assignment of the contract to his secretary in the circumstances shown he was released from liability thereunder is without substance. Such release could be effected only by a novation, which would require the Union’s consent (6 "Williston on Contracts [rev. ed.], § 1870; Rogers v. Thomson, 215 App. Div. 541). There is no evidence whatever that Payson even asked for, much less that the Union consented to his release.
Equally devoid of merit is the claim that because the executed deed, ready for delivery on August 1, 1957, named Payson as grantee while the bond and mortgage named Betty Schwartz as mortgagor, the Union lost the right to specific performance. Had Payson and his nominee been ready to close on August 1, *676 1957, obviously a satisfactory deed could have been prepared in short order.
Other minor objections put forward by Payson may be dismissed briefly. The sidewalk repair notice issued after the date of the contract was the responsibility of the purchaser, not of the seller. Under the contract the purchaser was also bound to take the property subject to the rights, if any, to maintain the underground vaults. Compliance with the borough president’s notice of June 21, 1957 affecting the vaults was therefore also the duty of the purchaser. Payson offered no proof of the nonpayment of the license fees referred to in his fourth defense. The absence of revenue stamps on the deed was obviously of no moment, for, if as Payson has urged, the grantee should have been the assignee, the stamps would have been placed on the deed finally delivered. Since neither he nor the assignee was then prepared to close he should not be heard to complain of the absence of the stamps on that occasion. (See Cole v. Ralph, 252 U. S. 286, 293; Hoffman v. Ronan Co., 275 App. Div. 57.)
Payson has shown no valid ground for his refusal to take title and accordingly the Union is entitled to specific performance of the contract. Necessarily, Betty Schwartz, the assignee, may not recover back the down payment which will now be applied towards the purchase price. Thus no forfeiture of the down payment results; instead, the contract of purchase will be carried out in accordance with its terms.
The motion of Betty Schwartz as plaintiff to conform the pleading's to the proof is granted. The motion of the Union to dismiss the amended complaint of Betty Schartz as plaintiff for failure to state a cause of action is denied. The motions of Payson and Betty Schwartz for judgment are severally denied. An exception is allowed in each instance to the party adversely affected by these rulings.
The foregoing constitutes the decision pursuant to section 440 of the Civil Practice Act.
Settle judgment.