McDOUGALL v. SCHNEIDER et al.

(Supreme Court, Appellate Division, Second Department.   October 12, 1909.)

1. COVENANTS (§ 51*)—RESTRICTIVE COVENANTS—ENFORCEMENT.

    One selling land with a covenant not to erect flats in the immediate neighborhood, or with a covenant not to erect on his own land any structure which shall impair the view, will not be permitted to erect such structures on land in the neighborhood subsequently acquired by him, since the intent of the agreement will be thereby defeated.

    [Ed. Note.—For other cases, see Covenants, Cent. Dig. § 50; Dec. Dig. § 51.*]

2. COVENANTS (§ 79*)—RESTRICTIVE COVENANTS—ENFORCEMENT.
 An owner platted land into lots, and made a map thereof, which recited that the property when sold was restricted; thus making it first-class residence locality. The deeds of the lots contained building restrictive cove- nants. Deeds conveying grounds within the boundaries of the map and also ground outside thereof contained a restrictive covenant applicable to so much of the property as was within the boundaries while the residue was conveyed without restrictions. *Held*, that the restrictive covenant was for the mutual benefit of the grantees of the lots, and could be enforced by any of them.
 [Ed. Note.—For other cases, see Covenants, Cent. Dig. §§ 78–82; Dec. Dig. § 79.*]

3. VENDOR AND PURCHASER (§ 130*)—CONTRACTS—UNMARKETABLE TITLE.
 A restrictive building covenant on land made for the mutual benefit of the grantees of parcels thereof and enforceable by any one of them is such an incumbrance as renders the title unmarketable.
 [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 246; Dec. Dig. § 130.*]

Submission of controversy under Code Civ. Proc. § 1279, by Walter McDougall, plaintiff, and Helene Schneider and another, defendants. Judgment for plaintiff in accordance with the terms of the submission of controversy.

Argued before HIRSCHBERG, P. J., and GAYNOR, BURR, RICH, and MILLER, JJ.

Edward T. Horwill, for plaintiff.
Charles S. Taber, for defendants.

BURR, J. In 1898 Cyrus A. Dunham was the owner of a large tract of land in the borough of Brooklyn. In July, 1899, he caused a map to be filed in the Kings county register's office known as the "map of Kenwood," the property upon which was shown to be divided into blocks bounded upon East Eighteenth, Nineteenth, Twenty-First and Twenty-Second streets, and Avenues K, L, M, and Ocean avenue. The property was further subdivided into lots, more than 500 in num-, ber. He procured printed copies of the map to be made, containing the words: "This property, when sold, is restricted, thus making it a first-class residence locality." Thereafter he sold the entire tract in separate parcels to various persons. Each of the deeds, except those for property fronting on Ocean avenue, contained a covenant which provided as follows:

"And the said party of the second part, for itself, its successors and assigns, does hereby covenant and agree to and with the said parties of the first part, their heirs and assigns as follows:
"First. That neither the said party of the second part, nor its successors or assigns, shall or will erect or permit upon any portion of the said premises any building except a detached dwelling house for one family only, of not less than two stories in height, with a cellar, nor of less cost than twenty-five hundred dollars, nor with a roof of the character or description known as a flat roof, and also excepting a private stable.
"Second. That neither the said party of the second part, nor its successors or assigns, shall or will erect or permit more than one such dwelling and one such stable on each parcel of land forty feet in width by one hundred feet in depth."
"Fourth. That neither the said party of the second part, nor its successors or assigns, shall or will erect, or permit upon any portion of the said premises

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

any fence, building or part of building within twenty feet of the building line of Avenues K, L and M, East Eighteenth street, East Nineteenth street, East Twenty-First street and East Twenty-Second street, nor any stable within sixty feet of the building line of Avenues K, L and M, East Eighteenth street, East Nineteenth street, East Twenty-First street and East Twenty-Second street. The above covenants as to twenty-foot building line shall not apply to steps, piazzas, bay or oriel windows upon houses erected in accordance with the above restrictions.

"These covenants to run with the land and are to be construed as covenants running with the land until January 1, 1920, when they shall cease and terminate."

The deeds of the lots fronting on Ocean avenue contained similar covenants, except that the buildings were to cost not less than $3,500 each, and were to be placed at a greater distance back from the line of the avenue than was required as to lots fronting on the other streets. By various mesne conveyances the defendants became the owners of 80 lots situated upon three different blocks upon said map. Each of these conveyances contained a reference to the said covenants and restrictions, and was made subject to the same. Thirty-four houses had been erected upon other portions of the property shown on the map, eight of which were upon two of the blocks in question. Each of these houses has been built in conformity with the requirements of the covenant. No house has been built upon any part of the property shown on the map in violation thereof. The parties to this controversy entered into a contract by which the defendants agreed to sell, and the plaintiff agreed to purchase, the said 80 lots. Prior to the time agreed upon for closing the contract, the defendants procured an instrument to be executed by Dunham and his wife, by which he released the property from the said covenants so far as he was able to do so. At that time he owned no property shown upon the map. The plaintiff objects to completing his contract upon the ground that the covenant was not a personal covenant for the benefit of Dunham, but that it inured to the benefit of all of his grantees, and could not be released without their consent. We think his contention is correct. One class of restrictive covenants are those "which are entered into with the design to carry out a general scheme for the improvement or development of real property. This class embraces all the various plans, generally denominated in the English cases as building schemes, under which an owner of a large plot or tract of land divides it into building lots to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which the several grantees may make of their premises." Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687. It is apparent that this covenant belonged to this class: (a) Because of the statement above referred to contained upon the printed copies of the maps. It is true that there is no evidence that any of these printed copies were exhibited to any of the persons who became purchasers of any of the lots shown thereon. There is no evidence to the contrary. But this statement is at least evidence that an intent at that time existed in the mind of Dunham to carry out a general scheme to make this exclusively residential property. (b) This intent was effectuated by an express provision in each of the deeds making the covenant applicable to all of

the property shown on the map, whether that included in the particular conveyance or not. (c) There was a further declaration that the covenant was to continue to be operative until 1920, and should run with the land. It is true that Dunham owned other land immediately adjoining that belonging to him and shown upon the map. It is manifest, however, that the restrictive covenant was not intended for the benefit and protection of any contiguous or neighboring lands which he retained, because, while he was selling his Kenwood lots subject to the covenant, he sold part of the property immediately adjoining free from any restrictions. In two instances when he sold a plot of ground, part of which was within the boundaries of the property shown on the map and part of which was outside of it, although the entire parcel was conveyed by a single deed, that deed contained a restrictive covenant applicable to so much of the property as was shown on the Kenwood map, while the residue of the property was conveyed without restrictions. The language contained in the various deeds of the Kenwood property, to the effect that "it is hereby expressly covenanted and agreed that nothing herein contained shall be construed, nor shall there be any obligation upon the party of the first part, his heirs or assigns, to restrict in any manner any other premises now or hereafter owned by the party of the first part, his heirs or assigns," was manifestly intended to prevent any possible equitable rights arising in favor of the owners of land shown on the Kenwood map as to such adjoining property while Dunham was the owner thereof. A person who sells land with a covenant not to erect flats in the immediate neighborhood, or who covenants not to erect upon his own land any structure which should impair the ocean view, will not be permitted to erect such structures upon land in the neighborhood subsequently acquired by him, since the purpose and intent of the agreement would be thereby defeated. Lewis v. Gollner, 129 N. Y. 227, 29 N. E. 81, 26 Am. St. Rep. 516; Gawtry v. Leland, 31 N. J. Eq. 385. Perhaps the exception was not necessary to protect Dunham's rights in the adjoining land, but we think that clearly was the purpose of it. The covenant in question may be enforced by any of the owners of the land shown on the Kenwood map upon the theory that there is a mutuality of covenant and consideration which binds each and gives to each the appropriate remedy. "Such covenants are entered into by the grantees for their mutual protection and benefit, and the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the enhancement in its value due, to similar restrictions upon all the other lots in the same tract." Korn v. Campbell, supra; Silberman v. Uhrlaub, 116 App. Div. 869, 102 N. Y. Supp. 299. This covenant constituted such an incumbrance as rendered the title unmarketable. Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303.

There should be judgment for the plaintiff upon the submitted controversy for the return of the earnest money and the costs of examining the title, with interest, together with the costs and disbursements of this submission. All concur.