LEON TANENBAUM et al., Doing Business under the Firm Name of L. TANENBAUM, STRAUSS AND COMPANY, Respondents, *v.* ABRAHAM BOEHM et al., Doing Business under the Firm Name of BOEHM AND COON, Appellants.

Real estate brokers — when broker has produced a person ready and willing to purchase property upon the vendor's terms the latter is liable for broker's commissions.

1. When a broker produces a person ready and willing to enter into a contract upon his employer's terms, he has earned his commissions and if his efforts have been rendered futile by his employer's fault, the latter will not be heard to say that the broker has not performed. The requirement of the Statute of Frauds, that the agreement between the parties must be evidenced in writing, has no bearing upon the question of whether the broker has earned his commissions.

2. Where the minds of the parties met in agreement upon the essential terms and conditions of a lease, and the subsequent failure to consummate it formally was due to an unreasonable demand of the defendants, the brokers who brought about the agreement on their behalf cannot be deprived of the right to commissions.

*Tanenbaum v. Boehm*, 135 App. Div. 286, affirmed.

(Argued May 17, 1911; decided May 30, 1911.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered January 5, 1910, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action, and the facts, so far as material, are stated in the opinion.

*Edward W. Hatch* and *George L. Shearer* for appellants. The evidence is conclusive that the minds of the parties to the proposed lease never met as to many of the essential terms and conditions of a contract of lease, therefore the plaintiffs never earned their commissions, and the direction of a verdict in their favor presents a reversible error. (*Bank of Monongahela Valley* v. *Weston,* 159 N. Y. 201, 208; *Sundheimer* v. *City of New York,* 176 N. Y. 495; *Sibbald* v. *B. Iron Co.,* 83 N. Y. 378; *Condict* v. *Cowdrey,* 139 N. Y. 273; *Pullich* v. *Casey,* 43 App. Div. 122; *Haase* v. *Schneider,* 112 App. Div. 336; *Sherry* v. *Praol,* 131 App. Div. 771; *Bryant* v. *Ondrake,* 87 Hun, 477; *Brown* v. *N. Y. C. R. R. Co.* 44 N. Y. 79; *Frank* v. *Hewitt,* 56 App. Div. 497; *Arnold* v. *Rothschild's Sons Co.,* 37 App. Div. 564; 164 N. Y. 562.)

*Ernest Hall* and *Alex L. Strouse* for respondents. The minds of the defendants and the prospective tenants met on all material elements of a lease and the brokers earned their commissions. (*Smith* v. *Peyrot,* 201 N. Y. 210; *Barnard* v. *Monnot,* 3 Keyes, 203; 1 Abb. Ct. App. Dec. 108; *Heinrich* v. *Korn,* 4 Daly, 74; *Dennis* v. *Charlick,* 6 Hun, 21; *Brady* v. *Foster,* 72 App. Div. 416; *McQuillen* v. *Carpenter,* 72 App. Div. 595; *Suydam* v. *Healy,* 93 App. Div. 396; *Cusack* v. *Ailkman,* 93 App. Div. 579; *Putter* v. *Berger,* 95 App. Div. 62; *Martin* v. *Werman,* 107 App. Div. 482; *Moses* v. *Helmke,* 18 Misc. Rep. 357.)

Gray, J. The plaintiffs are real estate brokers and they have brought this action to recover the commissions, which were earned by them, as they allege, by finding for the defendants a party able and willing to take a lease of their property on terms agreed upon. At the conclusion of the trial, the court directed a verdict for the

plaintiffs; denying a similar motion in behalf of the defendants and, also, their request to submit the case to jury. It is necessary, therefore, briefly, to examine the evidence, in order that it may be seen whether the facts, material to the establishment of the plaintiffs' case, were in dispute. Upon the undisputed facts, did there remain a question whether the minds of the property owners and of the proposed lessee had met upon the essential terms of a proposed lease? If they show that they had and that the contract of lease was not consummated by reason of the subsequent fault of the defendants in making unreasonable, or capricious, demands, then, there was no error in the ruling of the trial court. The Appellate Division has affirmed the judgment recovered by the plaintiffs; although the justices divided sharply in opinion upon the question.

The defendants owned the premises at the southwest corner of Fifth avenue and 35th street, in the city of New York, and they requested the plaintiffs to procure a tenant for them for a long term of years. The plaintiffs submitted an offer by Mr. Ball, of the firm of Best & Co., a person amply responsible for his engagements, and after some negotiations, a meeting took place on December 14th, 1905; at which were present the two plaintiffs, the two defendants, with their attorneys, and Mr. Ball, with his attorney. The meeting was very prolonged over the discussion of what a lease for a long term should require and provide for. With respect to what took place, there is no dispute between the parties and, when they separated, there does not appear to have been a difference upon any subject proposed to be covered by the written lease and the difficulty arose, only, when, some days later, the defendants, advised by their attorney, insisted upon incorporating a particular provision in the instrument. The agreement reached by the parties on December 14th was that there should be a lease for 23 years, at an annual rental, payable quarterly, for the

first two years, of $65,000, and, for the remaining 21
years, at $100,000; with the privilege of two renewals for
periods of twenty-one years each, at a rental of four per
cent upon the appraised value of the land.  A new build-
ing was to be erected upon the land by the lessee, upon
the expiration of some existing leases, having two years
to run, and the nature of the building, its dimensions,
construction and divisions were, all, agreed upon.  The
lessee was to pay all taxes, assessments, or other charges
against the property, and to assume the existing leases.
It was agreed that, if an existing mortgage for $1,450,000
should be called, the lease should be subordinated to a
new mortgage for $1,500,000 at the same interest rate.
To secure the performance by the lessee of the covenants
of the lease, Mr. Ball was to mortgage to the defendants
his house in the sum of $75,000.  The lessee, also, was to
pay in advance the amount of rental which would become
due for the last quarterly period of the first two years of
the term.  Thus, there was reached an agreement, which
involved a lease of defined property, for a certain period
of years, at a stated rental, payable quarterly, and by
which the lessee was, at his own expense, to erect a new
commercial building, within a certain time, of a certain
description; to bear all the charges imposed by the
authorities upon the property and to give security for the
performance of the covenants of the lease.  All this was
shown by the testimony of Mr. Coon, who, alone of the
defendants, was examined, and he makes it very clear
that, when the meeting of December 14th broke up, all
that was left to be done was to prepare a written form of
lease.  A proposal by the plaintiffs that an agreement
be, then, reduced to writing was negatived, because of
the lateness of the hour, and the defendants' attorney
promised a form of lease at an early date.  I quote from
defendant Coon's testimony: "After we finished these
negotiations which I have described, when we had after
a great many discussions finally agreed upon these terms,

Mr. Ball and I both said, 'Now, gentlemen, we have agreed upon these financial terms, it is up to the lawyers to draw the lease and put this in good legal verbiage, so that we can execute and have it in writing. * * * I think I asked Mr. Ball if he would pay the last quarter of the first two years in advance, that is, on the signing of the lease. I think I was the one that did it. I think Mr. Ball said to me, 'Now, gentlemen, is there anything that you have in your mind that might possibly enter here into these further discussions? If I accede to that, will that be practically all that you require of me?' I said, 'I don't know of anything, excepting that these attorneys — it is up to these attorneys to draw the lease.' He said, 'I accede then.' I think he said, or we both said, 'Of course the attorneys are to draw the lease.' After I said there was nothing further, Mr. Ball said, 'Then I agree to it.' The some one there shook hands and some one said, 'The matter is closed.'" This last demand of the defendants upon Mr. Ball was motived by the desire to obtain moneys to pay the plaintiffs' commissions of $22,300. Mr. Coon testified that the plaintiffs had asked to have them paid, as soon as the transaction was closed, and "that was what caused me to call Mr. Ball back," to "try whether Mr. Ball would pay the last quarter of the second year." The plaintiffs, Mr. Ball, his, and defendants', attorneys were examined and there is no substantial variance in their testimony as to what occurred during the meeting. Subsequently, Mr. Putzel, the defendants' attorney, proposed forms of lease, which, at first, were objected to by Mr. Ball's attorney, for various reasons relating to what had been the agreement of the parties, at their meeting, and to the reasonableness of certain proposed provisions; but, in the end, the matter came down to one ground of objection. As to the ordinary and usual provisions to be inserted in a lease of such a nature and with the conditions theretofore agreed to, Mr. Ball testified that there was no objection. As the

appellants' counsel now states it: "the transaction finally fell through, because of inability to agree upon this subject, the tenant's attorney insisting that, in the event of the failure of the tenant to erect the building, the landlord's remedy must be confined to ejectment; while the landlord's attorney insisted that the landlord should have the remedy by summary proceedings." Or, as Mr. Putzel, the defendants' attorney, testified, "I understood from the terms of the lease that absolutely all the difference between us was the remedy that we should have in the event of failure to erect the building. Under the paper I gave him he had the 23 years lease, if he lived up to his agreement, and if he did not, we could put him out summarily, instead of by ejectment. That was the only difference between us." Mr. Putzel's final letter to the lessee's attorney describes this difference as the one upon which they "split" and "I have no doubt," he writes further, "we can agree on the other clauses of the lease. I insist that * * * the landlord should have the right to dispossess;" referring to the building clause.

The dissenting opinion below holds, in effect, that the failure to consummate the transaction, because of the insistence by the defendants upon the provision for summary proceedings, was a fact which went to the completeness of any agreement between the parties and which, if it did not entitle the defendants to the direction of a verdict, required a submission of the case to the jury. It was thought that it was a question of fact whether there had been a meeting of the minds upon all the essential provisions of a lease and, if the failure to agree was due to the subsequent act of the defendants, then, that it was for the jury to say whether the proposed terms were unreasonable. I think that the learned dissenting justices have failed to apprehend the full effect of the evidence, or to appreciate — if it is permissible to use the. term — the extra-legal nature of the defendants'

demand, and that the trial court committed no error in the direction of the verdict.

There had been such an agreement between Mr. Ball and the plaintiffs' employers, the defendants, on December 14th, upon the essentials of a contract of lease of the property, as to have rendered it enforcible by an action. That the requirement of the Statute of Frauds, that the agreement must be evidenced in writing, might be pleaded in defense, has no bearing upon the question of whether the plaintiffs had earned their commissions. That, alone, depended upon whether the minds of the parties had met upon an agreement for a lease and whether the brokers had been the procuring cause. The rule of law applicable to such cases has been long settled. It was expressed by Judge FINCH in *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378), in this language: "in all the cases, under all and varying forms of expression, the fundamental and correct doctrine is, that the duty assumed by the broker is to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue." (p. 382.) And it was held in that case that, while the risk of failure is the broker's, there is an "important and necessary limitation. If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind after the purchaser, ready and willing, and consenting to the prescribed terms, is produced; * * * then the broker does not lose his commissions. * * * But this limitation is not even an exception to the general rule affecting the broker's right, for it goes on the ground that the broker has done his duty, that he has brought buyer and seller to an agreement, but that the contract is not consummated and fails through the afterfault of the seller." (p. 383.) If the broker produces a person ready and willing to enter into a contract upon his employer's terms, he has earned his commissions and if

his efforts have been rendered futile by his employer's fault, the latter will not be heard to say that the broker has not performed. (*Mooney* v. *Elder*, 56 N. Y. 238; *Wylie* v. *Marine Nat. Bank*, 61 ib. 415; *Smith* v. *Peyrot*, 201 ib. 210.) It goes without saying that the doctrine of the cases relating to sales of real estate is equally applicable to those of leases of real estate. In this case, all that the parties had left to be done was the preparing of a form of lease, which should incorporate the material features of their important agreement. Those having been settled upon, it was assumed that the lease would be drawn in such terms and with such conditions as would be appropriate. It was left to the lawyers, as Mr. Coon says, to put the lease "in good legal verbiage." In fact, as already shown, the proposed lessee made no objection to the propriety of numerous clauses inserted in the lease by the owner. The work of the lawyers was, simply, to arrange the form of the contract. The transaction, by which the premises were to be transferred and held in lease for a term of years, upon certain terms and conditions, the principals had, themselves, closed. There was no refusal by the proposed lessee to execute a lease, containing what had been agreed to with the defendants and the ordinary provisions inserted by their lawyer; the refusal was because of a demand for a condition that had not been within the understanding of the parties and was quite improper. The demand of the defendants, that the lease should contain a provision, in the event of a default by the lessee to erect the building, which would authorize the institution of summary proceedings to recover the possession, was unreasonable, in that it proposed a remedy inapplicable under the statute. The statute, (Code of Civ. Pro. sec. 2231), enumerates five cases, in which such proceedings are authorized, namely, where a tenant, or lessee, holds over after the expiration of his term; where he holds over after default in payment of rent, where he holds over after default in

the payment of any taxes or assessments, which he has agreed to pay; where he has taken the benefit of an insolvent act, or has been adjudicated a bankrupt, and where the demised premises are used as a bawdy house, or for any illegal trade, or business. To insist, therefore, upon such a remedy for the violation of the condition relating to the erection of a building was, altogether, improper and the consequent failure to consummate the agreement to lease was due to the fault of the defendants. Enough has been said to show that the minds of the parties had, in fact, met in agreement upon the essential terms and conditions of a lease and that, as the subsequent failure to consummate it formally was due to an unreasonable demand of the defendants, the plaintiffs could not be deprived of the right to their commissions.

I think that none of the exceptions upon the appellants' brief would justify a new trial and, therefore, that the judgment should be affirmed.

CULLEN, Ch. J., WILLARD BARTLETT, HISCOCK, CHASE and COLLIN, JJ., concur; VANN, J., dissents.

Judgment affirmed, with costs.