SHERIDAN v. McLAUGHLIN.

(Supreme Court, Appellate Division, First Department.    April 14, 1916.)

1. BROKERS ⬦61(2)—COMMISSIONS—TITLE—MARKETABLE TITLE.
    That a building for which a broker's principal agreed to exchange his premises was so constructed that cornices, etc., projected over the street line, does not show a defect in title, warranting the principal, who refused to consummate the agreement, in denying the broker commissions; the title to the premises not being unmarketable.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 77, 78, 92; Dec. Dig. ⬦61(2).]

2. BROKERS ⬦61(2)—COMMISSIONS—TITLE—MARKETABLE TITLE.
    Where the title to two parcels of land, one of which had been a servient tenement, was united in the same owner, and he proposed to exchange the same to defendant, defendant cannot, on the ground of the old servitudes, refuse broker's commissions due one who negotiated the exchange, on the ground that the title to the premises he was to receive was unmarketable.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 77, 78, 92; Dec. Dig. ⬦61(2).]

3. BROKERS ⬦61(2)—COMMISSIONS—MERCHANTABLE TITLE—RESTRICTIVE COVENANTS—BURDEN OF PROOF.
    A mere showing that land was held subject to restrictive covenants, without any showing as to the restrictions, will not warrant defendant in refusing to consummate an exchange of property on the ground that the title to the property which he was to receive was incumbered, and so he could not defeat the rights of a broker who negotiated the exchange.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 77, 78, 92; Dec. Dig. ⬦61(2).]

4. BROKERS ⬦60—COMMISSIONS—CONTRACT MADE—SUFFICIENCY.
    Where defendant, who was to exchange lands with another, agreed that for a difference in value he would receive a mortgage, but the time the mortgage was to run was not fixed, defendant cannot, on the ground that the minds of the parties did not meet, defeat broker's right to commissions for effecting the exchange.
    [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. ⬦60.]

Appeal from Trial Term, New York County.

Action by William P. Sheridan against Thomas J. McLaughlin. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, PAGE, and DAVIS, JJ.

George M. Prest, of New York City (Henry Siegrist, of New York City, on the brief), for appellant.

Thomas C. Ennever, of New York City, for respondent.

LAUGHLIN, J.    The plaintiff in his complaint alleges a cause of action on a quantum meruit for services for procuring a purchaser ready, willing, and able to pay $1,250,000 for the premises known as "The Gramont" and "Gramont Annex," at the northeasterly corner of Broadway and Ninety-Eighth street, borough of Manhattan, New York, which were owned by the defendant.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The plaintiff was a real estate broker. Evidence was presented in his behalf tending to show that he was employed by the defendant to procure a purchaser for said premises for the consideration as alleged in the complaint; that he succeeded in interesting one Noakes in the purchase of said premises, and Noakes offered in exchange therefor premises owned by him on West 127th street, between Riverside Drive and Claremont avenue, known as the "Bordeaux" and "Crescent Court," and that with the consent of the defendant the negotiations were continued by the plaintiff and between the parties; and that the owners finally agreed verbally upon the basis of an exchange of their respective properties, and that the defendant subsequently refused to execute a contract or to consummate the exchange.

The plaintiff, in an effort to comply with the rule stated by this court in Mutchnick v. Davis, 130 App. Div. 417, 114 N. Y. Supp. 997, with respect to the burden of proof on the plaintiff in an action to recover for commissions for services in negotiating an exchange of property, which was more broad than required by the facts, gave further evidence tending to show that Noakes was in peaceable possession of the premises, which he offered in exchange for the premises of the defendant, under a deed of conveyance, and that he was ready and willing and able to enter into a contract to exchange his premises and to exchange them for the premises of the defendant on the terms on which they had agreed.

The learned counsel for the respondent claims that the title to the property which Noakes offered in exchange was unmarketable, for the reason that there were encroachments from the buildings both upon Riverside Drive and 127th street, and that the deed of conveyance to Noakes of one of the parcels was expressly made subject to restrictive covenants in other deeds. At the time the defendant refused to consummate the trade he interposed no objection to Noakes' title, and he assigned no reason for such refusal, excepting, in effect, that he had changed his mind with respect to making the trade.

[1] The encroachments were only shown by a survey which was introduced in evidence. It showed that a coping in front of the Bordeaux on Riverside Drive and 127th street extended a little less than 5 feet beyond the line of the street; that a stoop at the main entrance on Riverside Drive and another on 127th street extended about 6 feet into the street; that the cornice at the roof projected 1 foot 2 inches over Riverside Drive and 127th steet; that stone at the side of the Riverside Drive entrance projected 9½ inches, and the stone over the entrance projected 1 foot 1½ inches; that the window sills projected 1¼ and 3½ inches, and that the metal frames of the windows projected 2 inches and ornamental stone about the windows projected from 3 to 7 inches; that brick at the side of the entrance on 127th street projected 8 inches, and that stone over the entrance at that side projected 1 foot 2 inches; that the window sills on that side projected 1 inch and ornamental stone 1½ inches; that the encroachments with respect to Crescent Court consisted of a coping along Claremont avenue and 127th street which extended 4 feet 9 inches beyond the line of the street; that a stoop on Claremont avenue ex-

tended 7 inches into the street; that the roof cornice projected 4 feet; that a fire escape projected 3 feet; that a stone ledge at the first floor projected 8 inches and another at the third floor projected 1 foot 4 inches, and another at the sixth floor projected 1 foot; that brick terra cotta ornaments projected from 2 to 8 inches; and that a stone balcony projected 2 feet over the entrance.

Under the decisions of this court in Acme Realty Co. v. Schinasi, 154 App. Div. 397, 139 N. Y. Supp. 266, and in Leerburger v. Watson, 75 Misc. Rep. 3, 134 N. Y. Supp. 818, affirmed by this court and by the Court of Appeals without opinion 157 App. Div. 915, 142 N. Y. Supp. 1127, and 213 N. Y. 662, 107 N. E. 1080, these encroachments do not render the title of Noakes unmarketable, for they are not shown to be integral parts of the structure and presumptively they may be removed without seriously affecting the buildings. Moreover, the encroachments were manifestly visible to the naked eye, and no objection was made to the title on that or any other ground.

[2, 3] The deed of conveyance of the Bordeaux to Noakes contains the recital that it is subject "to covenants and restrictions contained in deeds recorded in the register's office in Liber 1256 of Conveyances, page 299, Liber 1584 of Conveyances, page 468, and Liber 1257 of Conveyances, page 137, and modifications recorded in Liber 107 of section 7 of Conveyances, page 410." That conveyance was also subject to a party wall agreement between the former owners of the Bordeaux and Crescent Court, but the trial court correctly ruled that that was merged when the title to the two became vested in Noakes. The deeds containing the restrictive covenants were not offered in evidence, nor was the nature of the restrictive covenants in any manner shown, nor was any evidence offered tending to show that the restrictive covenants were still in force, or, if so, that they affected the market value.

We are of opinion that there was no presumption that the restrictive covenants to which reference was made in the conveyance to Noakes were in force at the time the defendant refused to consummate the trade, and that there is no presumption that they affected the market value of the premises, or that Noakes' title was thereby rendered unmarketable. In all of the cases to which our attention has been drawn, in which it was held that the title was unmarketable, the restrictive covenants were shown, and it either appeared thereby that they affected the marketability of the title, or there was evidence showing that they did. See Wetmore v. Bruce, 118 N. Y. 319, 23 N. E. 303; Kountze v. Helmuth, 67 Hun, 343, 22 N. Y. Supp. 204, affirmed 140 N. Y. 432, 35 N. E. 656; Goodrich v. Pratt, 114 App. Div. 771, 100 N. Y. Supp. 187; Dieterlen v. Miller, 114 App. Div. 40, 99 N. Y. Supp. 699; Heim v. Schwoerer, 115 App. Div. 295, 100 N. Y. Supp. 808, affirmed 187 N. Y. 543, 80 N. E. 1111; McDougal v. Schneider, 134 App. Div. 208, 118 N. Y. Supp. 861; Scudder v. Watt, 98 App. Div. 228, 90 N. Y. Supp. 605; Conlen v. Rizer, 109 App. Div. 537, 96 N. Y. Supp. 566.

[4] It was verbally agreed between Noakes and the defendant that the equity of the defendant over that of Noakes was $35,000, and that

Noakes was to execute a second mortgage at 5 per cent. on the premises to be conveyed by defendant to him therefor. Nothing was said about the term for which the second mortgage was to run. It is now contended on the part of the respondent that, inasmuch as the parties did not agree upon all of the terms of that mortgage, their minds did not meet, and that therefore the commissions were not earned by the plaintiff. It was shown that Noakes was ready, willing, and able to consummate the trade and to execute a second mortgage. The defendant, having failed to suggest any time for the payment of his equity for security for which the second mortgage was to be given, is not now in a position to insist, for the purpose of preventing a recovery of commissions by the plaintiff, that there was no agreement with respect thereto. It is manifest that he did not anticipate that Noakes would be unwilling to execute a mortgage for any reasonable term which might be requested by him, for he neither required the plaintiff to procure a mortgage for a definite term, nor did he make any suggestion with respect thereto before breaking off the negotiations. The evidence shows that the minds of the parties met upon every term and condition proposed by the defendant, and both parties considered that the negotiations had resulted in a definite agreement, which they agreed to consummate, and shook hands with respect thereto. In such circumstances the broker employed by the defendant, having done all that he was requested to do, earned his commissions, and cannot be deprived thereof by the failure of his employer to consummate the trade. Tanenbaum v. Boehm, 126 App. Div. 731, 111 N. Y. Supp. 185; Id., 135 App. Div. 286, 120 N. Y. Supp. 392, affirmed 202 N. Y. 293, 95 N. E. 708; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441; Davidson v. Stocky, 202 N. Y. 423, 95 N. E. 753. The evidence presented by plaintiff, therefore, presented a prima facie case, and the court erred in dismissing the complaint.

It follows that the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event. Order filed. All concur.