JOSEPH I. SMITH, Plaintiff, v. ELISA W. HERRMAN, Individually and as Executrix and Sole Surviving Trustee under the Last Will and Testament of JAMES S. HERRMAN, Deceased, Defendant.

Supreme Court, New York County, November 29, 1927.

**Brokers — real estate brokers — commissions — failure of broker, suing for commission, to show seller gave broker full terms upon which property would be sold, warrants dismissal of complaint.**

Plaintiff, who seeks to hold defendant liable for a real estate brokerage commission, either as executrix, or to hold her individually in that she falsely represented that she had power to bind the estate, property of which plaintiff was seeking to lease, cannot recover and the complaint should be dismissed, in the absence of proof that defendant gave said broker full and complete terms upon which she was willing to lease the property. Assuming that plaintiff made an offer to lease defendant's premises for a term of years at a specified rental, upon " the ordinary covenants and conditions," this would not have produced such a " meeting of the minds " as would entitle the broker to recover unless a formal and fuller agreement was subsequently reached.

ACTION by real estate broker to recover commissions.

*Lane & Logan* [*Chester H. Lane* of counsel], for the plaintiff.

*Francis C. Dale* [*Leslie J. Tompkins* of counsel], for the defendant.

BIJUR, J. This is an action for a broker's commission tried before me without a jury. Plaintiff seeks to charge defendant, either as executrix and trustee duly authorized (and thereby to hold the estate which she represented), or to hold her individually for falsely representing that she had power to bind the estate. I have not considered the question of the nature of her liability because I find that no liability was established against her in any capacity. The plaintiff's story is that having ascertained that the estate owned some eight lots on West Fourteenth and Fifteenth

streets, upon which were erected business buildings and tenements, he called upon the defendant at her residence and asked on behalf of his then employer and present assignor whether a proposition to lease the property would be entertained. Upon an affirmative answer, he later presented an oral proposition to lease the property for twenty-one or forty-two years at a rental of $33,000 per annum, upon " the ordinary covenants and conditions," and then and there gave the name of his principal, which offer was accepted by defendant. Now, assuming that such an offer had been made and " accepted," I do not think that it would have evidenced such " a meeting of the minds " as would entitle the broker to recover unless a formal and fuller agreement was subsequently reached. Plaintiff in substance bases his claim in respect to this interview upon the theory, which he contends is announced in *Tanenbaum* v. *Boehm* (202 N. Y. 293), that if a broker has produced a vendee or lessee ready and able to close upon the terms given by the vendor or lessor to the broker, his commission is earned. That statement is indeed contained in the opinion and is quoted in substance from *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378), but it is not the basis of the decision nor indeed has it any direct application thereto. Moreover, in the *Sibbald* case it was used with reference to a sale of personalty which, as a matter of common knowledge, is generally a simple transaction in contrast to the many complications and conditions affecting a sale or lease of real estate. The rule as applied to realty received comment, explanation and exposition in a number of subsequent decisions, notably *Franke* v. *Hewitt* (56 App. Div. 497), an affirmance upon the opinion of JOSEPH F. DALY, referee, from which I quote a few sentences as indicating its purport: " In arriving at the intention of the parties we must consider the circumstances as well as their language. This was a letting of considerable magnitude and large interests were involved. The terms settled upon in the oral negotiations were the barest outline of an agreement upon so important a subject. They were such matters as would be discussed and agreed upon as preliminary to any practical negotiations * * * and they left untouched particulars which persons of the experience of these parties must have known would be certainly incorporated in any written lease." In two at least of the cases which have followed the *Franke* decision, namely, *Arnold* v. *Schmeidler* (144 App. Div. 420) and *Strout Farm Agency* v. *De Forest* (192 id. 790), the court has been at pains to point out that where from the surrounding circumstances it can be determined that the owner has given the broker the full and complete terms upon which he is willing to sell his property, the broker has earned his commission when he has found a purchaser upon those

terms, regardless of whether an agreement be executed thereafter or not, but that where the terms given to the broker are manifestly only part, although perhaps the principal items in the proposed transaction, an agreement on all other details must be reached in order to entitle the broker to a recovery. The value of this exposition lies in its demonstration that the right of the broker to compensation under his contract of employment is to be measured by the same rule as that applicable to any other contract of employment, namely, whether the employee has fulfilled his duty under the terms of his employment. These must be ascertained not merely from casual words used in the course thereof, but in the light of all the implications derived from the situation of the parties, the character of the property involved and generally all the circumstances surrounding the transaction. In the *Tanenbaum* case the court was careful to point out that all the details had been subsequently agreed upon, the ultimate break in the negotiations being caused by the insistence on the part of the lessor that a term be added which had not merely been previously unmentioned, but which was illegal in itself and unenforcible. The broker was permitted to recover. The *Tanenbaum* case involved a lease somewhat of the character of the one in controversy before me and the recital of the details which required subsequent agreement suggests exactly what happened here, namely, that when the like details came under negotiation no agreement could be reached. Plaintiff here, no doubt, realized this defect in his case in chief and sought to supply it by the testimony that he and defendant had agreed that the lease should be " upon the ordinary covenants and conditions." There is no proof of the character of the " ordinary covenants and conditions " in a case of this kind, and if I were called upon to take judicial notice of what they might be I should decide that there are no such ordinary terms and conditions. Lord MANSFIELD in *Morgan* v. *Bissell* (3 Taunt. 65), a similar case in this regard, said significantly: " As to the question, what are usual covenants, it is an endless source of litigation." Everyone even casually familiar with a real estate transaction must appreciate that the proposed lease of eight lots in the city of New York, covered by various classes of buildings and for a term of from twenty-one to forty-two years, would necessarily involve questions of repair, construction, insurance and security, not to mention many other items, without which such a lease I am tempted to say would be almost impossible. Indeed, paradoxical as it may appear, I think that one may safely say that if there were " *ordinary* " covenants and conditions applicable to leases of this kind in the city of New York it would be unnecessary to mention them at all. The law

would·imply them.    Moreover, I do not believe that the proposition as phrased by plaintiff was ever made to the defendant.    Its artificiality and pedantry are too apparent to require further comment.    Finally, if this language were necessary and had the very words been spoken to a woman not engaged in business, and particularly not in the real estate business, it could not be believed by a real estate broker that she would understand what was meant or that she would regard such a statement as indicating that the bargain had been closed, or as plaintiff puts it that the " minds of the parties had met."    As may well be supposed from my analysis of this first occasion at which plaintiff claims the minds of the parties met, this interview was followed by prolonged negotiations, including two meetings of many of the parties interested at the office of defendant's lawyer.    My conclusion from the evidence is that at these interviews no complete agreement was reached by any one.    It is clear that the defendant took no active part in these conferences at all, but left the matter to discussion between representatives of the proposed lessee and her own children — who were the substantial beneficiaries under her testator's will.    It is conceded that all of these beneficiaries were not even represented by duly authorized agents at the conference.    However, the very presence of many of the beneficiaries, and in their counsel's office confirms defendant's story that from the beginning she told the plaintiff that whatever was done would have to be acceptable to the real parties in interest in addition to enjoying the supervision of counsel.    A third meeting of the minds is claimed by plaintiff to have been arrived at when, as he testified, he brought a copy of a form of lease which he himself had drawn to the defendant's residence, and which he claims she then examined and declared to be satisfactory.    This testimony is denied by both defendant and her son who was present at the interview.    They say that there was no examination of this proposed lease, but that they immediately said that ·they would refer the matter to their counsel precisely as they claim to have done in the earlier interviews.    Plaintiff has gone further and testified that the defendant and her son on this occasion expressed great dissatisfaction with the conduct of their counsel, accused him of pedantry, obstinacy and the introduction of volumes of language into a simple instrument, etc.    I regard this as improbable to the point of incredibility.    Moreover, the entire attitude of the plaintiff in claiming that an agreement had been reached on any of these three occasions is negatived by two letters written at about this stage of the negotiations by his assignor and employer, which letters he either delivered personally to the defendant or with the contents of which he was familiar.    They indicate

in almost every line that the writer did not regard the transaction as closed, but on the contrary was seeking to secure the defendant's assent to a proposition the consummation of which the writer assumed was being prevented by defendant's counsel.   I have not undertaken to pass in review all the facts which I might have been called upon to decide had I reached the contrary conclusion on these crucial points.   I must not omit, however, to state that I have the greatest doubt that it was ever made known to the defendant who the real lessee was to be, or that it was ever agreed whether that lessee was to be one or more invididuals or an existing corporation or a corporation to be formed for the purpose of taking this lease.   For all of the reasons stated I direct a verdict for the defendant.