Callahan, J.
The defendant appeals from a judgment entered on the verdict of a jury in favor of the plaintiff, a real estate broker, in an action for commissions. The complaint proceeded on the theory that the plaintiff had procured a purchaser ready, able and willing to buy the defendant’s property on the terms proposed by the defendant.
There was testimony by the plaintiff that he had been employed by the defendant as a broker to sell her real property in South Salem, Westchester County, New York, for $150,000 all cash, and that the defendant agreed to pay him a 5% commission. The plaintiff claims to have advised the defendant on June 13, 1946, that he had a buyer ready, able and willing to pay $150,000 cash for the parcel, but that she refused to proceed with the deal because of objection to the purchaser’s race or religion on learning his name.
The defendant did not testify on her own behalf. The plaintiff’s attorney, however, read parts of her deposition on examination before trial. The defendant admitted a telephone call from the plaintiff inquiring about the price of her property and that she quoted a figure of $150,000, but denied any hiring of the plaintiff as a broker or agreement to pay commissions. She further conceded that about the middle of June, 1946, the plaintiff called her to say that he had a buyer, but allegedly refused to give the name of his client. The plaintiff is said to have informed the defendant that the property was being bought for development purposes, and the defendant refused to sell for anything like that. It does not appear, however, that the defendant in quoting the price for the property in any wise limited the nature of its use by a prospective purchaser. The area was zoned, and the buyer produced by the plaintiff testified that he was familiar with the zoning regulations.
One of the questions involved in this case is whether the plaintiff may recover for commissions in the absence of a meeting of the minds on the part of the buyer and seller as to the amount of down payment on execution of the formal contract of sale and as to date of title closing. The plaintiff concedes that these details were never discussed with the defendant. *182 Nevertheless, the plaintiff contends that he is entitled to recover on the theory of performance because of the defendant’s arbitrary and capricious termination of negotiations and refusal to proceed, although his buyer was ready, able and willing to close the deal.
Under the circumstances it would seem that the plaintiff might have treated the defendant’s conduct as -a breach of contract and proceeded on quantum meruit (Strout Farm Agency v. DeForest, 192 App. Div. 790). On the facts in this case, however, the question is presented as to whether the plaintiff may recover on the theory of performance. It was suggested in the Strout case (supra) that a situation might arise where a broker arbitrarily discharged before agreement on some of the essential terms of a contract might recover the agreed compensation, if he could show that he had produced a purchaser who was not only ready, able and willing to meet the seller’s proposed terms of sale, but also any undisclosed demands of a reasonable nature as to terms usually left for the formal contract. We think that this is such a case. The sale being for all cash, it was not to be expected that any terms would be discussed as to down payment and date of closing title until it came time for preparation of a formal contract. The seller might have proposed such terms in advance of contract and insisted on the buyer’s acceptance, but did not see fit to do so in this case. We do not see how the defendant can complain of a failure to agree on these particulars, if, as the jury was entitled to find, she had capriciously refused to discuss them when a buyer was produced by the plaintiff. The natural progress of the transaction to a successful conclusion was thwarted by the defendant’s sudden and wrongful refusal to proceed (Ostroff v. Doctor, 238 N. Y. 264).
The proposed purchaser testified that he was ready, able and willing to pay the “ all cash ” consideration for the property. If this was so, as the jury appears to have found, it tends to establish his ability to pay any reasonable sum on contract. His readiness and financial ability in this regard were for the triers of the facts. The buyer testified that he “ was ready to take title as soon as the lawyers agreed among themselves on a time * * The moment the title company would be ready with the search, we’d be ready to take title.”
The trial court instructed the jury that the plaintiff was required to establish that he had found a buyer ready, able and willing to meet all the essential terms of the sale. It was left to the jury as a question of fact whether the failure to specify *183 the amount of down payment on contract and date for closing of title constituted such a failure to agree on essential terms of the bargain as to justify the conclusion that there was no meeting of the minds of the parties. Of course, such details are essential to any formal contract for the sale of real estate. The question submitted to the jury might more properly have been whether the defendant had waived these terms or made them impossible of performance by her conduct. However, we see no substantial error in the manner in which the issues were left to the jury in this case.
The defendant should not be permitted to take advantage of conditions precedent unperformed, when she herself occasioned their nonperformance (Sibbald v. Bethlehem Iron Co., 83 N. Y. 378). The repudiation of contractual obligations under an agreement of hiring is not to be justified by evidence of omissions of matters not contemplated at the time and easily supplied or corrected (Ostroff v. Doctor, supra). A broker is not to be deprived of commissions because of an unreasonable demand of his employer resulting in failure to consummate a sale of real property with a buyer otherwise ready, able and willing to close the deal (Tanenbaum v. Boehm, 202 N. Y. 293, 301).
The defendant also contends that the proof was insufficient to show the financial ability of the plaintiff’s client to pay the cash price of $150,000 for the property in question. In this connection the record discloses that the proposed buyer was an operator in Westchester County real estate; that between November, 1945, and August, 1946, he received $207,314.47 in cash from the sale of various real properties; that he invested $61,800 in other parcels between November, 1945, and March, 1946; and that he purchased real estate involving a cash investment of $180,000 after collapse of the deal with the defendant. The purchaser testified to the ownership of his own home in New York City, and that he maintained a bank balance in the neighborhood of $20,000. He also owned a publishing business in which he had invested $105,000, but said that he did not list this business as an asset. It was further testified that one Lutkoff had engaged in numerous other real estate transactions with the plaintiff’s client as a partner and had knowledge of the proposed deal for the purchase of the defendant’s property. Lutkoff, who was described as a man of unlimited means and with a lot of money, had viewed the property and agreed to take part in its purchase. While such proof did not show that the plaintiff’s buyer actually had $150,000 in cash or his exact *184 financial position on or about June 13, 1946, we think that the evidence warranted the submission of the case to the jury on the question of the purchaser’s financial ability to consummate this deal, even if any possible contribution by Lutkoff be disregarded.
We have examined the defendant’s other contentions as to alleged errors on the trial of this action and find that they are not substantial.
The judgment appealed from should be affirmed, with costs.